ACCEPTED
14-15-00273-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/27/2015 8:30:39 AM
CHRISTOPHER PRINE
CLERK

NO. 14-15-00273-CV

NO. _____

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

3/27/2015 8:30:39 AM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE FIRST OR FOURTEENTH DISTRICT OF TEXAS

_____

*IN RE: CONNIE V. HARRISON*

_____

**PETITION FOR WRIT OF MANDAMUS**

_____

Lana Shadwick
State Bar No. 00784951
2210 Norfolk, Suite 920
Houston, Texas 77098
Telephone: (713) 392-8222
Telecopier: (713) 622-6334
Lana@LanaShadwick.com
Attorney for Relator, Connie V. Harrison

## **Preamble**

COMES NOW Connie V. Harrison, Relator herein, who respectfully files this, her Petition for Writ of Mandamus. In this Petition, Ms. Harrison will be referred to as "Ms. Harrison," and her ex-husband Cliff Harrison, will be referred to as "Mr. Harrison."

## Identity of Parties and Counsel

Pursuant to Tex. R. App. Pro. 52.2, Ms. Harrison identifies the following

parties and counsel:

**Relator and her Counsel:**
Connie V. Harrison
Represented by: Lana Shadwick
State Bar No. 00784951
**Respondent:**
Judge Alicia K. Franklin
Presiding Judge, 311th District Court
201 Caroline, 8th Floor
Houston, Texas 77002
Telephone: (713) 274-4580
**Real Parties in Interest and his Counsel:**
Cliff Harrison
Represented by:
Schlanger, Silver, Barg & Paine LLP
Patricia A. Wicoff
State Bar No. 21422500
Amy Harris
State Bar No. 2401057
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
Telephone: (713) 735-8514
Telecopier: (713) 351-4514

**Amicus Attorney:**
Heather Hughes
State Bar No. 00796794
952 Echo Lane, Ste. 475
Houston, Texas 77024
Telephone: (713) 463-5505
Telecopier: (713) 463-5213

# Table of Contents

Preamble.................................................................................................i

Identity of Parties and Counsel ..................................................... iii

Table of Contents ..................................................................... iv-v

Index of Authorities ..................................................................6

Statement of the Case....................................................................7

Statement of Jurisdiction................................................................8

Sole Issue Presented......................................................................8

**The Honorable Judge Franklin committed a clear abuse of discretion in refusing to render judgment based on the parties' mediated settlement agreement found in *Appendix 1* which dealt with all issues involving the children save and except management of their college funds.**

Statement of Facts........................................................................8

Arguments and Authorities ...........................................................12

Sole Issue Presented....................................................................12

**The Honorable Judge Franklin committed a clear abuse of discretion in refusing to render judgment based on the parties' mediated settlement agreement found in *Appendix 1* which dealt with all issues involving the children save and except management of their college funds.**

I.      **Introduction**.......................................................................13

II.     **The Standard Of Review**……………………………………..14

III.    **Texas Family Code Section 153.0071(e) Entitles Relator To A Judgment On the Mediated Settlement Agreement**…………………15

**A. Texas Family Code Section 153.0071**………………………..………..16

**B. The Texas Supreme Court Settled The Issue In** *In re Stephanie Lee* **– Mediated Settlement Agreements Are To Be Enforced**……………17

**C. Texas Family Code 153.001(a) Expresses Public Policy of Texas That Parents Should Be Able To Make Decisions About Their Children**....................................................................................22

**IV. Conclusion – Ms. Harrison Is Entitled To Entry Of The MSA Order And A Stay Of The March 27, 2015 9 a.m. Entry Of The Trial Court's Rendition That Does Not Adopt The MSA**...........................................22

Conclusion and Prayer ...........................................................................24

Certificate of Conference ........................................................................25

Certification ............................................................................................25

Certificate of Service ..............................................................................26

Certificate of Compliance .......................................................................26

Appendix……………………………………………………………27-28

# Index of Authorities

## Cases

*Acker v. Texas Water Comm'n,*
790 S.W.2d 299 (Tex. 1990)……………………………………………………16

*Am. Zurich Ins. Co. v. Samudio,*
370 S.W.3d 363 (Tex. 2012)…………………………………………………16

*City of DeSoto v. White,*
288 S.W.3d 389 (Tex. 2009)……………..…………………………………..16

*In re Gonzalez,*
981 S.W.2d 313 (Tex. App.—San Antonio 1998, pet. denied)…………………….26

*In re Stephanie Lee*,
411 S.W.3d 445 (Tex. 2013)……………...…………………………………..*passim*

*Molinet v. Kimbrell*,
356 S.W.3d 407 (Tex. 2011)……………...…………………………………….16

*Perkins v. City of San Antonio,*
293 S.W.3d 650 (Tex. App.—San Antonio 2009, no pet.)……………………..25

*Texas Dep't of Protective & Reg. Srvcs v. Mega Child Care, Inc.,*
145 S.W.3d 170 (Tex. 2004)…………………………………………………16

## Texas Statutes

Tex. R. Civ. P. 21…………….…...………………………………………….25

Tex. Fam. Code sec. 157.0071………………………...…………….*passim*

Tex. Fam. Code sec. 153.001(a)…………………………………………..24

Tex. Gov't Code sec. 311.026……………………………………………16

**TO THE HONORABLE COURT OF APPEALS:**

Relator, Ms. Connie V. Harrison, files this petition for writ of mandamus. Ms. Harrison asks this Court to issue a writ of mandamus to Judge Alicia Franklin, Presiding Judge of the 311th Judicial District Court of and for Harris County, Texas, compelling Judge Franklin to enter judgment based upon the mediated settlement agreement found in *Appendix 1* to this petition for writ of mandamus, and to stay the entry of judgment on March 27, 2015 at 9 a.m., based on the Judge Franklin's rendition of February 13, 2015 found in *Appendix 2*. In support of her prayer, Relator, Ms. Harrison would respectfully show this Honorable Court as follows.

## STATEMENT OF THE CASE

The Petitioner is Mr. Harrison, referred to here as ("Mr. Harrison") and Respondent is Connie Harrison, referred to here as ("Ms. Harrison"). The parties reached a Mediated Settlement Agreement ("MSA") on all matters dealing with their children on January 29, 2014. *Appendix 1* (MSA). In the MSA, Ms. Harrison has joint custody with Mr. Harrison. According to the MSA, Ms. Harrison is the primary care parent and the children live with Ms. Harrison in Harris County, Texas. Ms. Harrison and Mr. Harrison, along with their counsel signed and agreed to all provisions of the MSA.

7

Relator, Ms. Harrison, seeks relief from Judge Franklin's entering judgment on March 27, 2015 at 9 a.m. based on her February 13, 2015 rendition (*Appendix 2*) that fails to incorporate the parties' MSA as to parent-child issues.

## STATEMENT OF JURISDICTION

The basis of this Court's jurisdiction is section 22.002(a) of the Texas Government Code. This section confers jurisdiction on this Court to issue writs of mandamus agreeable to the principles of law regulating those writs, against a district judge.

## SOLE ISSUE PRESENTED

**The Honorable Judge Franklin committed a clear abuse of discretion in refusing to render judgment based on the parties' mediated settlement agreement found in *Appendix 1* which dealt with all issues involving the children save and except management of their college funds.**

## STATEMENT OF FACTS

**Background Overview:** The divorce action was filed in 2006. The case was tried to a jury beginning in March 2010 and ending in April 2010. Respondent appealed the final order in September 2010. In December 2012, the Fourteenth Court of Appels reversed and remanded the case to the trial court for a new trial, with the exception that the appellate court affirmed the divorce between the parties as of June 2010. The parties participated in mediation and signed a mediation

8

agreement on January 29, 2014. *Appendix 1.* On April 10, 2014, the Court signed an order to comport with the mediated settlement agreement. *Appendix 2.* Trial was conducted in January 2015 wherein Ms. Harrison was forced to proceed *pro se*. Ms. Harrison has repeatedly motioned for attorney's fees, and even though the community estate is sizable, she has not been awarded attorney's fees. On January 16, 2015, Ms. Harrison was ordered to pay the Amicus Attorney over $14,000.00. The Court also awarded on October 24, 2014 that monies in the registry of the Court in the amount of $14,421.31 be awarded to the Amicus Attorney.

- **Jan. 29, 2014:  Mediated Settlement Agreement Signed** - *Appendix 1*

Mr. Harrison and Ms. Harrison reached a Mediated Settlement Agreement ("MSA") on all matters dealing with their children on January 29, 2014. *Appendix 1* (MSA of January 29, 2014). In the MSA, Ms. Harrison has joint custody with Mr. Harrison. According to the MSA, Ms. Harrison is the primary care parent and the children live with Ms. Harrison in Harris County, Texas. Ms. Harrison and Mr. Harrison, along with their counsel signed and agreed to all provisions of the MSA. The MSA addressed all issues involving the children save and except management of their college funds. *See Appendix 1.* ). The MSA contained all the statutorily required language for a valid and enforceable MSA.

- **March 7, 2014 – Emergency Motion For Enforcement of MSA Filed By Mr. Harrison  -** *Appendix 5*

- **March 12, 2014 – Emergency Motion To Enter Order Filed By Amicus Attorney -** *Appendix 6*

- **April 4, 2014 – Mr. Harrison filed Motion to Enter MSA –** *Appendix 8*

- **April 10, 2014 – MSA incorporated into** *Agreed Order on Parent-Child Issues* **and it was signed by the Court** *– Appendix 3 & 4*

On April 10, 2014, the 311th Court entered the MSA and incorporated the MSA into the *Agreed Order on Parent-Child Issues* and the parties operated under this Order. *See Appendix* 3 (Agreed Order) & 4 (transcript of hearing).

- **May 30, 2014 – Hearing on Motion to Enforce MSA –** *Appendix* **9.**

On May 30, 2014 in a hearing before the Court, counsel for Ms. Harrison stated to the Court "We are asking this Court to enforce the MSA as written as I argued during my opening summary." *Appendix 9,* pg. 6 (Hearing transcript of 5/30/14). Mr. Harrison was questioned about "prior acts or criminal factors" and "a criminal conviction for family violence" but Mr. Harrison replied that there was not, "There was a dismissal. Deferred adjudication and a dismissal." He also testified that he received deferred adjudication on an assault and battery charge and the charge was dismissed. *Id.* at pg. 7.

- **September 3, 2014 – Hearing Before Associate Judge Without Notice To Ms. Harrison Resulting In Mr. Harrison Being Appointed SMC and Ms. Harrison Having Supervised Visitation** *– Appendix* **10**

On September 3, 2014, a hearing was heard and the Associate Judge ordered that Ms. Harrison be "immediately, instanter removed as a joint managing conservator" and ordering that Mr. Harrison "immediately, instanter appointed the temporary sole managing conservator." The order further provides that Mr. Harrison was to have "the exclusive right to all periods of possession and access with the children," and that Ms. Harrison "shall not have any periods of possession and/or access to the children until further order of the Court or by written agreement of the parties and the attorneys." The order also terminated Mr. Harrison's obligation to pay child support. Ms. Harrison was not represented by counsel. *Appendix 10.* Ms. Harrison tells Counsel she was not given notice and she was not served concerning the matters conducted during the September 3, 2014 hearing.

- **September 8th, October 24th, 2014 – Respondent Requested a *De Novo* Hearing and Appeal of the Associate Judge's Ruling – *Appendix* 12 & 13**

On September 8th and October 24th, 2014, Respondent timely filed a *Request For De Novo Hearing And Appeal To The District Court* appealing the September 3, 2014 hearing and Order of the Associate Judge. Although there is a notice of hearing in the district court records, Ms. Harrison tells counsel she did not receive a *de novo* hearing of the Associate Judge's order.

- **January 14th and January 16, 2015 - Ms. Harrison Asked The Court To Enter MSA But Was Denied An Opportunity To Present Evidence – *Appendix* 14 January 16th, 2014 Trial Transcript**

On January 16th, Ms. Harrison asked the trial court to enforce the MSA and the trial court denied her request. *Appendix 14*.

- **January 20, 2015 – Ms. Harrison filed Emergency Motion To Enforce MSA** – *Appendix* 16.

On the morning of January 20, 2015, Ms. Harrison filed another motion to enforce the MSA, she told the Court that she had filed the Motion and wished to urge the motion and her Motion was perfunctorily denied. *See Appendix* 15, pg. 4 (Trial transcript excerpt). The trial court continued the court trial and did not allow Ms. Harrison to put on evidence as to the MSA. Ms. Harrison also filed an Emergency Motion for Continuance.

- **February 13, 2015 – Trial Court's Rendition Giving Mr. Harrison SMC** – *Appendix* **2.**

On February 13, 2015, the Judge's Rendition gave sole managing conservatorship ("SMC") to Mr. Harrison and gave possessory conservatorship ("PC") to Ms. Harrison with only supervised visitation.

## ARGUMENT AND AUTHORITIES

### SOLE ISSUE PRESENTED

**Honorable Judge Franklin committed a clear abuse of discretion in refusing to render judgment based on the parties' mediated settlement agreement found in *Appendix 1* which dealt with all issues involving the children save and except management of their college funds.**

## I.    Introduction

The parties in this case were ordered to mediation and concluded the mediation by reaching a mediated settlement agreement and signing off on that MSA (all parties and counsel).  The MSA contained all the statutorily required language for a valid and enforceable MSA.

The first page of the mediated settlement agreement contains the following sentence, which appears in bold, capitalized and underlined print:

**"THIS MEDIATED SETTLEMENT AGREEMENT IS BINDING AND IS NOT SUBJECT TO REVOCATION."**
*Appendix 1* at pg. 1.

The parties, their counsel, and the amicus attorney signed the MSA after reading the following admonishment:

**"I HAVE READ, UNDERSTAND, AND I CONSENT TO ALL OF THE TERMS OF THIS BINDING AND IRREVOCABLE MEDIATED SETTLEMENT AGREEMENT.  I UNDERSTAND I HAVE THE RIGHT TO CONSULT WITH LEGAL COUNSEL BEFORE SIGNING THIS DOCUMENT."**
*Appendix 1* at pg. 3.

The MSA contains all of the necessary terms as it relates to parent-child issues save and except management of the children's college fund.  *Appendix 1* at pg. 2-3 and Exhibit A attached to the MSA.

**II.     The Standard Of Review**

The issue in this case involves the statutory interpretation of Texas Family Code section 153.0071 governing mediated settlement agreements. The Texas Supreme Court has held that questions of statutory construction are reviewed *de novo*. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). The fundamental objective in interpreting a statute is "to determine and give effect to the Legislature's intent." *Am. Zurich Ins. Co. v. Samudio,* 370 S.W.3d 363, 368 (Tex. 2012). The Statutory Construction Act mandates that courts give effect to the clear meaning of the words in a statute. Tex. Gov't Code sec. 311.026. The primary objective of statutory interpretation when a statute is unambiguous is to determine legislative intent by examining the statute's plain language. *City of DeSoto v. White,* 288 S.W.3d 389, 394 (Tex. 2009). A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex. 1990). If the statutory text is unambiguous, a court must adopt the interpretation supported by the statute's plain language unless that interpretation would lead to absurd results. *Texas Dep't of Protective & Regulatory Services v. Mega Child Care, Inc.,* 145 S.W.3d 170, 177 (Tex. 2004).

**III. Texas Family Code Section 153.0071(e) Entitles Relator To A Judgment On the Mediated Settlement Agreement**

Section 153.0071(e) entitles Relator, Ms. Harrison, to judgment on the mediated settlement agreement. In its wisdom, the Texas Legislature provided a solution for resolution of family law matters and empowered individuals to make decisions that are in the best interest of them and their children. In enacting section 153.0071 of the Texas Family Code, the Legislature not only empowered individuals to make decisions for themselves and their children, but also provided a way whereby they could come to agreements without protracted litigation and its concomitant expense. *See* Tex. Fam. Code Ann. sec. 153.0071. Other Texas statutes also reflect the general public policy of the state "to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children, and the early settlement of pending litigation through voluntary settlement procedures." Tex. Civ. Prac. & Rem. Code sec. 154.002. In accordance with that policy, the Legislature enacted Texas Family Code section 153.0071 to address the resolution of suits affecting the parent-child relationship.

## A. Texas Family Code Section 153.0071

Entitled "*Alternate Dispute Resolution Procedures,*" section 153.0071 of the

Texas Family Code provides in pertinent part:

(a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration. The agreement must state whether the arbitration is binding or non-binding.

(b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

(c) On the written agreement of the parties or on the court's own motion, the court may refer a suit affecting the parent-child relationship to mediation.

(d) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(e) *If a mediated settlement agreement meets the requirements of Subsection (d), a party is __entitled__ to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.*

(e–1) Notwithstanding Subsections (d) and (e), a court may decline to enter a judgment on a mediated settlement agreement if the court finds that:

(1) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and

(2) the agreement is not in the child's best interest.

Tex. Fam. Code Ann. sec. 153.0071(a)-(e-1) (*emphasis added*).

Subsection (d) provides that an MSA is binding on the parties if it is signed by each party and by the parties' attorneys who are present at the mediation and states prominently and in emphasized type that it is not subject to revocation. *Id.* sec. 153.0071(d). Subsection (e) goes even further, providing that a party to an MSA is "entitled to judgment" on the MSA if it meets subsection (d)'s requirements. *Id.* sec. 153.0071(e). Subsection (e-1) provides a narrow exception to subsection (e)'s mandate, allowing a court to decline to enter judgment on even a statutorily compliant MSA if three conditions are met: (1) a party to the agreement was a victim of family violence; (2) the violence impaired the party's ability to make decisions; and (3) the agreement is not in the best interest of the child.

**B.** **The Texas Supreme Court Settled The Issue In *In re Stephanie Lee* – Mediated Settlement Agreements Are To Be Enforced**

In *In re Stephanie Lee,* the Texas Supreme Court had before it on petition for writ of mandamus, the issue of "whether a trial court abuses it discretion in refusing to enter judgment on a statutorily compliant mediated settlement agreement (MSA)." *See In re Stephanie Lee*, 411 S.W.3d 445 (Tex. 2013). The trial court had refused to enter the MSA on best interest grounds. The Relator in the case argued that she was "entitled to judgment on the [MSA] because it met the statutory requirements under section 153.0071 of the Family Code. The Judge had denied enforcement on the MSA on the basis that a registered sex offender was living in her home.

The Texas Supreme Court noted that the issue before the Court was one of first impression. There was a split among the intermediate appellate courts. *Id.* at 450, fn.6. The Court also cited *Alvarez v. Reiser* from the Eastland Court of Appeals for the proposition that "even if one party withdraws its consent to the MSA, the trial court is required to enter judgment on the agreement." *Id.* (citing Alvarez v. Reiser, 958 S.W.2d 232, 233 (Tex. App.—Eastland 1997, pet. denied)).

The Court conditionally issued the writ of mandamus stating:

> ***We hold that this language means what it says: a trial court may not deny a motion to enter judgment on a properly executed MSA on such grounds.***

*Id.* at 457.

In its opinion, the Court found that:

> Encouragement of mediation as an alternative form of dispute resolution is critically important to the emotional and psychological well-being of children involved in high-conflict custody disputes. Indeed, the Texas Legislature has recognized that it is "the policy of this state to encourage the peaceable resolution of disputes, *with special consideration given to disputes involving the parent-child relationship, including the mediation of issues involving conservatorship, possession, and support of children*, and the early settlement of pending litigation through voluntary settlement procedures."

> *Id.* at 449 (*citing* TEX. CIV. PRAC. & REM. CODE sec. 154.002) (*emphasis the Court's own*).

The Court noted in detail, the high financial and emotional cost, and the harmful effect on children, of high-conflict litigation. The Court stated "The Legislature has thus recognized that, because children suffer needlessly from

traditional litigation, the amicable resolution of child-related disputes should be promoted forcefully." *Id.* at 449-50.

The Texas Supreme Court in *In re Stephanie Lee* held that:

Section 153.0071(e) unambiguously states that a party is 'entitled to judgment' on an MSA that meets the statutory requirements 'notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.' By its plain language, section 153.0071 authorizes a court to refuse to enter judgment on a statutorily compliant MSA on best interest grounds only when the court also finds the family violence elements are met. Stated another way, '[t]he statute does not authorize the trial court to substitute its judgment for the mediated settlement agreement entered by the parties unless the requirements of subsection 153.0071(e-1) are met.' Subsection (e-1), enacted after subsection (e), makes it absolutely clear that the Legislature limited the consideration of best interest in the context of entry of judgment on an MSA to cases involving family violence.

*Id.* at 453 (*citations omitted*).

The Court noted the distinction between section 153.0071(b) and section 153.0071(e) saying:

Section 153.0071(b), governing arbitration of child-related disputes, is also instructive. In stark contrast with subsection (e), subsection (b) explicitly gives trial courts authority to decline an arbitrator's award when it is not in the best interest of the child. (*citations omitted*). This distinction between arbitration and mediation makes sense because the two processes are very different. Mediation encourages parents to work together to settle their child-related disputes, and shields the child from many of the adverse effects of traditional litigation. On the other hand, arbitration simply moves the fight from the courtroom to the arbitration room. If the Legislature had intended to authorize courts to inquire into the child's best interest when determining whether to render judgment on validly executed MSAs, as it did in section 153.0071(b) with respect to judgments on arbitration awards, it certainly knew how to do so.

*Id.* at 453-54.

The Texas Supreme Court in *In re Stephanie Lee* held that "section 153.0071(e) reflects the Legislature's determination that it is appropriate for parents to determine what is best for their children within the context of the parents' collaborative effort to reach and properly execute an MSA." The Court opined that "[t]his makes sense not only because parents are in a position to know what is best for their children, but also because successful mediation of child-custody disputes, conducted within statutory parameters, furthers a child's best interest by putting a halt to potentially lengthy and destructive custody litigation." The failure of the trial court in this case to enforce the MSA has caused or enabled, the very things that the Texas Legislature was trying to address when it enacted section 153.00071(e). *Id.* at 454.

The Texas Supreme Court opined that "we hold that section 153.0071(e) encourages parents to peaceably resolve their child-related disputes through mediation by foreclosing a broad best interest inquiry with respect to entry of judgment on properly executed MSAs, ensuring that the time and money spent on mediation will not have been wasted and that the benefits of successful mediation will be realized. Allowing courts to conduct such an inquiry in contravention of the unambiguous statutory mandate in section 153.0071 has severe consequences that will inevitably harm children. The decisions below ignore clearly expressed legislative intent, undermining the Legislature's goal of protecting children by

20

eroding parents' incentive to work collaboratively for their children's welfare. This frustrates the policies underlying alternative dispute resolution in the custody context, which are firmly grounded in the protection of children." *Id.* at 455.

The Court concluded that a trial court may not deny a motion to enter judgment on a properly executed MSA under section 153.0071 based on a broad best interest inquiry. The Court held that in cases of abuse or neglect, section 261.101 of the Family Code provides a mandatory duty to report. Moreover, it noted that there were numerous other statutes authorizing protective action by the trial court, and said that the safeguards inherent in the mediation process fulfill the need to ensure that children are protected. *Id.* at 458.

The State Bar of Texas Family Law Council had submitted an *amicus curiae* brief in support of Relator's petition for writ of mandamus. The Court noted that the Council argued that:

> that a strict interpretation of section 153.0071 fulfills the state policy favoring amicable resolution of disputes and suggests that holding as the courts below did could lead to a loss in confidence in mediation and an increase in litigation over the best interest of the child. The Council argues that rules of statutory construction make clear that the Legislature intended to remove the best interest determination in the context of an MSA, instead deferring to parents to determine the best interest of the child, except where family violence is involved. The Council urges that to hold otherwise would 'gut the legislative intent favoring alternative dispute resolution of family law matters by mediation,' increasing both the cost of the proceedings and the stress on families forced to resolve 'their disputes in the adversarial venue of the courts, rather than the cooperative environment of mediation. The

Council contends that '[t]his result is certainly not in a child's best interest.'

*Id.* at 453 (*citations in amicus brief omitted*).

As is clear by the mandate set by the Texas Supreme Court in *In re Stephanie Lee*, a trial court abuses its discretion in denying a motion to enter judgment on an MSA and in setting a case for trial based on the court's conclusion that the MSA is not in the child's best interest.

## C. Texas Family Code 153.001(a) Expresses Public Policy of Texas That Parents Should Be Able To Make Decisions About Their Children

Moreover, section 153.001(a) of the Texas Family Code provides that:

In suits affecting the parent-child relationship, it is the public policy of the State of Texas to:

(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
(2) provide a safe, stable, and nonviolent environment for the child; and
(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

Tex. Fam. Code sec. (a).

## IV. Conclusion – Ms. Harrison Is Entitled To Entry Of The MSA Order And A Stay Of The March 27, 2015 9 a.m. Entry Of The Trial Court's Rendition That Does Not Adopt The MSA

Ms. Harrison is entitled to entry of the MSA order as to parent-child issues. As evidenced by the record, and the exhibits filed in the Appendix to this writ of mandamus, the parties intended that the MSA would be enforced. They signed on

January 29, 2014, and the trial court incorporated it into an Interim Agreed Order on April 10, 2014. *Appendix 1, 3, 4.* Moreover, the Petitioner and Respondent/Relator, and the Amicus Attorney, all urged that the MSA would be entered. *Appendix 5, 6, 8, 9, 12, 16.* Relator urged the MSA again at trial but the trial court judge refused to entertain her presentation of the issue. *Appendix 14, 15.*

The trial court abused its discretion in its rendition by not adopting the provisions of the mediated settlement agreement as to parent-child issues, including not allowing Relator, Ms. Harrison to put on evidence of the mediated settlement agreement during trial of this matter in January of this year. *See Appendix* 14, pg. 4-5 & 15, pg. 4 (January 16th & 20th trial excerpts). Moreover, the trial court denied hearing the matter saying Relator had not given 3 days notice. The trial in chief began on January 20, 2015. Relator asked the trial court judge on January 16th, 2015 when pre-trial matters and other items were discussed, to entertain her motion but the court would not saying Relator did not give the requisite notice. The motion was dispositive on the parent-child issues, and Texas Rule of Civil Procedure 21 specifically excepts trial matters from the notice requirement. *See Perkins v. City of San Antonio,* 293 S.W.3d 650, 654-55 (Tex. App.—San Antonio 2009, no pet.); Tex. R. Civ. P. 21. The trial court abused its discretion in not entertaining the motion, and in not incorporating the MSA into its rendition.

The trial court signed an "*Interim Agreed Order On Parent-Child Issues*" and the MSA was adopted during the April 10, 2104 hearing. *See Appendix 3* (Agreed Order) *& 4* (transcript of hearing).

Ms. Harrison is entitled to entry of the MSA order, as well as a stay of the March 27, 2015, 9 a.m. entry of the trial court's rendition that does not adopt the MSA. Relator, Ms. Harrison has filed a Motion to Stay concurrently with the filing of this writ of mandamus in the appellate court.

Counsel is also filing, and urging before the trial court at 9 a.m., that it agree to stay the proceedings in the trial court until the appellate court has an opportunity to rule on the writ of mandamus. As in an order that is being appealed, the trial court has the authority to suspend an order that is being urged at the appellate court. *See In re Gonzalez,* 981 S.W.2d 313, 314 (Tex. App.—San Antonio 1998, pet. denied).

## CONCLUSION AND PRAYER

Ms. Harrison is entitled to entry of the MSA order, as well as a stay of the March 27, 2015, 9 a.m. entry of the trial court's rendition that does not adopt the MSA. Ms. Harrison prays for any other and further relief, general or special, in law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

/s/ Lana Shadwick
Lana Shadwick
State Bar No. 00784951
2210 Norfolk, Suite 920
Houston, Texas 77098
Telephone: (713) 392-8222
Lana@LanaShadwick.com

## CERTIFICATE OF CONFERENCE

Respondent has notified all counsel. Petitioner has not responded to an inquiry about the undersigned counsel's filing a writ of mandamus or a motion to stay but has responded to another email correspondence. The amicus attorney is opposed.

/s/ Lana Shadwick

## CERTIFICATION

I certify that I have reviewed the Petition and Writ and concluded that every factual statement in the petition is supported by competent evidence included in the Appendix or the Record.

/s/ Lana Shadwick

## CERTIFICATE OF SERVICE

In accordance with Tex. R. App. Pro. 9.5(a), the undersigned hereby certifies that a true and correct copy of the foregoing has been sent to Patricia A. Wicoff, lead counsel of record for Mr. Harrison, c/o Schlanger, Silver, 109 North Post Oak Lane, Suite 300, Houston, Texas 77024 and to Heather Hughes, counsel for J.E.H. and V.M.H., 952 Echo Lane, Suite 475, Houston, Texas 77024 through electronic email, and to Alicia K. Franklin, Judge of the 311th District Court, 201 Caroline, 8th Floor, Houston, Texas 77002 by hand-delivery, and postage prepaid certified mail, return receipt requested, on this, the 27th day of March, 2015.

/s/ Lana Shadwick

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. Pro. 9.4(i)(3), the undersigned hereby certifies that according to the word count function of the computer program used to generate the document, the portions of the foregoing document subject to the rule contain contain less than 4200 words total and that the text thereof is in 14 point Times New Roman font.

/s/ Lana Shadwick

IN THE COURT OF APPEALS
FOR THE FIRST OR FOURTEENTH DISTRICT OF TEXAS

*IN RE: CONNIE V. HARRISON*

**RELATOR'S APPENDIX**

- **APPENDIX 1 - Jan. 29, 2014: Mediated Settlement Agreement Signed**

- **APPENDIX 2 - February 13, 2015 – Trial Court's Rendition Giving Mr. Harrison SMC**

- **APPENDIX 3 - April 10, 2014 – MSA incorporated into *Agreed Order on Parent-Child Issues* and it was signed by the Court**

- **APPENDIX 4 – April 10, 2014 Transcript of Hearing**

- **APPENDIX 5 - March 7, 2014 – Emergency Motion For Enforcement of MSA Filed By Mr. Harrison**

- **APPENDIX 6 - March 12, 2014 – Emergency Motion To Enter Order Filed By Amicus Attorney**

- **[NO APPENDIX 7]**

- **APPENDIX 8 - April 4, 2014 – Mr. Harrison filed Motion to Enter MSA**

- **APPENDIX 9 - May 30, 2014 – Transcript of Hearing on Motion to Enforce MSA**

- **APPENDIX 10 - September 3, 2014 – Hearing Transcript**

- **APPENDIX 11 – September 3, 2014 Order**

- **APPENDIX 12 -- September 8th – Respondent Requested a *De Novo* Hearing and Appeal of the Associate Judge's Ruling**

- **[NO APPENDIX 13]**

- **APPENDIX 14 - January 16, 2015 Trial Transcript**

- **APPENDIX 15 - January 20, 2015 – Trial Transcript**

!'"#$!%#&''())
* +,- /0123242567.

NO. **2006-65864**

Clifford Harrison § IN THE DISTRICT COURT
§
vs. § 311ᵗʰ JUDICIAL DISTRICT
§
Connie Harrison § HARRIS COUNTY, TEXAS

## MEDIATED SETTLEMENT AGREEMENT  On PARENT CHILD ISSUES ONLY

The undersigned parties hereby enter into this Mediated Settlement Agreement. It is the intention and agreement of the parties that:

---

### THIS MEDIATED SETTLEMENT AGREEMENT IS BINDING AND IS NOT SUBJECT TO REVOCATION

Agreed to by Petitioner _____CH_____ and Respondent _____CVH_____

---

The undersigned parties agree to compromise the claims and controversies currently at issue in the pending action. *Related to parent child issues only-except for the 529 plan & UTMA accounts* The parties wish to avoid potentially protracted and costly litigation and agree and stipulate that they have carefully considered the needs of the children, if any, their respective abilities and contributions in cash and otherwise, for the support and best interests of the children. Both parties stipulate that this Mediated Settlement Agreement as set forth herein is in the children's best interest, is in the parties' best interests, and is willfully and voluntarily entered into. *Parties agree this is total complete agreement on all parent child issues, except for the 529 plan & UTMA accounts*

This Mediated Settlement Agreement is signed voluntarily with the advice and consent of counsel on the date set out below. Its provisions are intended to be incorporated into an Agreed Final Order.

If one or more disputes arise with regard to the drafting of an Order reflecting the terms of this agreement or any of its provisions, the parties agree to attempt to resolve same by phone conference with the Mediator who facilitated this settlement. If the parties cannot resolve their differences by phone conference, then each party agrees to schedule mediation with the mediator within thirty (30) days to resolve the disputes and to share the costs of same equally. If a party refuses to mediate, then that party may not recover attorney's fees or costs in any litigation brought to construe or enforce this agreement.

Pg 1 of 5

Unofficial Copy Office of Chris Daniel District Clerk

**ANY DISPUTES ARISING FROM THE DRAFTING OF THE ORDER OR CLOSING DOCUMENTS WHICH CANNOT BE RESOLVED BY MEDIATION AS SET FORTH ABOVE, SHALL BE DECIDED BY BINDING ARBITRATION WITH JOHN R. MILLARD SERVING AS FINAL BINDING ARBITRATOR. THE PARTIES WAIVE ANY CONFLICT IN JOHN R. MILLARD SERVING AS ARBITRATOR BECAUSE OF HIS BEING THE MEDIATOR IN THIS CASE.**

Parties and counsel agree to notify the Mediator, in writing, of their request for his services at least seven days prior to a Court entry date and shall deposit an additional $700.00 per party toward the costs of said services before any arbitration services are rendered. Parties and/or counsel agree to meet with John R. Millard at his office, and to furnish him with a computer disk (or email attached file) and one copy of each draft of the language in dispute. The parties agree to pay any additional arbitration fees directly to John R. Millard on or at the time of the arbitration award. The parties agree that John R. Millard shall have the authority to reallocate arbitration fees to either party.

The provisions of this agreement shall be effective immediately and shall supersede any temporary orders or other agreements of the parties with respect to the subject matter hereof.

The parties agree to certain terms and conditions, as set forth in the short-hand rendition of the agreement, which is set forth in **Exhibit "A"** attached hereto and incorporated herein for all purposes.

Attorneys for Petitioner shall prepare the first drafts of the Agreed Final Order and other closing documents unless otherwise stated in Exhibit "A". Both parties agree to execute all other documents reasonably required to effect the provisions of this Mediated Settlement Agreement. Unless otherwise agreed to in advance by the parties to the contrary, all documents reasonably required to effect the provisions of this Mediated Settlement Agreement shall be based on the forms and provisions in the most recently publicly published Texas Family Law Practice Manual from the State Bar of Texas, unless it has failed to reflect the latest amendments to the Family Code which shall trump stale Family Law Practice Manual language.

The discovery obligations of each party shall immediately cease upon the execution of this Mediated Settlement Agreement, including the requirement for either party to respond to outstanding discovery requests or supplement any discovery responses. *As it Relates to parent Child issues only. except for the 529 plans & UTMA accounts*

*Pg 28 of 5*

Unofficial Copy Office of Chris Daniel District Clerk

All outstanding motions that have been filed by either party shall be dismissed and no ~~further litigation shall occur other than~~ the signing and filing of an Agreed Final Order incorporating this Mediated Settlement Agreement. *Regarding parent child issues*

_REGARDING PARENT CHILD ISSUES_ ✓ *except to 529 plans & UTMA accts* CVH CVH

**Waiver of Contest ~~and Record~~**. All parties and their attorneys hereby waive contest *AS TO This Partial Settlement Agreement* and agree that any party may appear in person in Court to prove up this agreement upon 48 hours' notice to the other parties, ~~without the other parties being present, and without a record being made.~~ CVH CVH *except to 529 plans & UTMA accts* CVH CVH

**I HAVE READ, UNDERSTAND, AND I CONSENT TO ALL OF THE TERMS OF THIS BINDING AND IRREVOCABLE MEDIATED SETTLEMENT AGREEMENT. I UNDERSTAND I HAVE THE RIGHT TO CONSULT WITH LEGAL COUNSEL BEFORE SIGNING THIS DOCUMENT.**

_____
Petitioner

Signed on: _Jan 29, 2014_

_____
Attorney for Petitioner

Signed on: _1/29/2014_

_____
Respondent

Signed on: _Jan. 29th 2014_

_____
Attorney for Respondent

Signed on: _1/29/14_

_____
Amicus / GAL

Signed on: _1.29.14_

Unofficial Copy Office of Office of Chris Daniel District Clerk

Exhibit A

I. Conservatroship

1. the parties are appointed joint managing conservators sharing all rights powers privilege and duties equally and independently save and except as follows:

a. Mom to have exclusive on primary residence within Harris County. Domicile restriction lifted if Cliff moves outside of such area
b. Mom to have exclusive right to receive support
c. Mental health care evaluation and treatment by agreement of the parties and in the absence of an agreement the children's pediatrician shall be the tie breaker on mental health care issues – Dr. Nicholas Lindsay
d. Invasive non emergency medical treatment to be pursuant by advanced agreement of the parties.
e. Dr. Nicholas Lindsay shall remain the children's primary care pediatrician
f. The issues related to the children's 529 plans and UTMA accounts are not resolved by this agreement and shall be determined by the court including right to manage such accounts and any claims related to a transfer from community funds to such account.
g. Other rights of a sole managing conservator not otherwise referenced shall require the joint agreement.
h. Mom to have exclusive right to make educations decisions except that children shall continue at 2nd Baptist for so long as Cliff pays tuition, and other required costs for the children to attend.

II. Support

Dad pays guidelines under new guidelines beginning on February 1, 2014 Dad maintain health insurance at his sole cost and expense and Dad pays 70% of uninsured health care costs and Mom pays 30% of uninsured health care costs.

III. Possession and access

Dad to have an spo with elections and additionally during the regular school year he shall have the right to possession of the children on the Monday following the 1st and 3rd Friday of each month beginning at the time school regularly recesses and ending at the time school regularly resumes on the immediately following Tuesday.

Mom to have the right to possession at all other times not set out for Dad above and at all times for a parent who does have the right to determine the primary residence under an spo

Cliff shall have spring break in even numbered years and Connie in odd.

Cliff to have Thanksgiving in even numbered years and Connie in odd numbered years

*CVH CH* 9 p.m. *CVH CH*

Connie will have school out till Dec 26 in even numbered years and Cliff to have from Dec 26 to school resumes in Even number years and then both parties Christmas is reversed in odd years.

Injunctions: neither party disparage the other parent and neither shall discuss any aspects of this litigation with the children.

Each party surrenders the children at the school or the other parent's residence where applicable at the end of their respective periods of possession. However, if Cliff moves outside of Harris County he shall deliver both ways.

Neither parent can sleep with the children except when traveling

IV. Forms: parties shall use advanced family practice manual for applicable forms
V. John Millard shall arbitrate any disagreement as to wording of parent child orders

~~Respondents no post child shall extend~~ *CVH CH* ~~obstacle or any period in the property.~~

VI. CLIFF PAY 100% of AMICUS FEE THAT ARE OUTSTANDING. *CVH CH*

Pg 5 of 5

Unofficial Copy Office of Chris Daniel District Clerk

| | | |
|---|---|---|
| HARRISON, CLIFFORD L | § | IN THE DISTRICT COURT OF |
| | § | |
| V | § | |
| | § | HARRIS COUNTY, TEXAS |
| HARRISON, CONNIE VASQUEZ | § | |
| | § | |
| AND IN THE INTEREST OF | § | 311TH JUDICIAL DISTRICT |
| | § | |
| J E L H II, AND V M H , CHILDREN | § | |

## JUDGE'S RENDITION

☐     RECORD MADE BY     Stephanie Wells

HEARING/TRIAL DATES    1/20/15, 1/21/15, 1/22/15, 1/23/15, 1/26/15, 1/27/15, 1/28/15, 1/29/15, 1/30/15

## THE COURT FINDS

☐   It has jurisdiction over the subject matter, the parties, and the children subject of this suit

☐   All parties and those entitled to service were properly served

☐   That the parties were married on or about Feb 26, 2000 and that the 14th Court of Appeals issued an opinion and substitute opinion granting the parties' divorce as of June 21, 2010

Pursuant to the 14th Court of Appeals issued opinion and substitute opinion reversing and remanding the SAPCR and Division of Property Issues, THE COURT FINDS

☐   Clifford L Harrison and Connie V Harrison are parents of the following children J E L H II (male) and V M H (female) and that there are no other children of the marriage

☐   No other court ordered conservatorship, court-ordered guardianships, or other court-ordered relationships affecting the children, subject of this suit, other that temporary orders in this matter exists

☐   The children are beneficiaries of funds set aside for their college education

☐   Having considered the circumstances of the parents and of the children, the Orders contained herein are in the Best Interest of the children subject of this suit

☐   That the appointment of the parents as Joint Managing Conservators in this matter is not in the best interest of the children BUT RATHER, the appointment of Clifford L Harrison as Sole Managing Conservator of the children and Connie V Harrison as Possessory Conservator of the children are in the best interest of the children

☐   That a SPO is inappropriate or unworkable in this case

☐   The orders concerning possession and access for Connie Harrison with the children subject of this suit are not more restrictive than necessary to provide for the safety and welfare of the children

☐   The division of the property as contained within this rendition is fair & equitable to both Clifford L Harrison and Connie V Harrison

☐   The Court finds that Clifford Harrison has incurred $305,000 00 in reasonable and necessary attorneys fees with SSBP (Patricia Wicoff) since the remand in this matter through trial

☐   The Court finds that the Amicus, Heather Hughes has incurred reasonable and necessary attorneys fees since the remand in this matter through trial in the amount of $19,000 00, in the pursuit of protecting the best interest of the children in her role and capacity as Court appointed Amicus to assist the Court in protecting the best interest of the children, for which she has not been paid and said attorneys fees are taxable as additional child support

## THE COURT ORDERS

☐   Clifford L Harrison is appointed Sole Managing Conservator of the children subject of this suit and shall have all of the rights and duties of a parent Sole Managing Conservator as set forth in the Texas Family Code for a parent SMC including all exclusive rights awarded to a SMC including but not limited to the exclusive right to designate the primary residence of the children and said residence shall be restricted geographically to Harris County, Texas or contiguous counties thereto

☐   Connie V Harrison is appointed Possessory Conservator of the children subject of the suit and shall have all of the rights and duties of a parent Possessory Conservator except and save for the right to attend school activities

☐   That Clifford Harrison shall have possession and access of the children at all times not specifically set forth for Connie V Harrison herein

Page 1 of 3

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging

FILED
Chris Daniel
District Clerk

FEB 13 2015

Time_____

Harris County, Texas

By_____
Deputy

- That Connie V Harrison shall have supervised possession and access of the children on Saturdays following the Second and Fourth Fridays of each month for a period of 4 hours or on days and at times mutually agreed upon between the parties and the supervisor  All periods of possession shall be supervised by supervisor David Tristan, with Connie V Harrison being responsible for 100 percent of the costs, or to be supervise by SAFE through their private program, with Connie V Harrison being responsible for 100 percent of the costs of enrollment of both parties and for visitation expenses  Both parties are ORDERED to enroll in the SAFE Program within 10 days of Connie Harrison's notice in writing to Clifford L Harrison that she is electing supervised visits through the SAFE Program  Connie V Harrison shall be responsible for scheduling the supervised visitation with the supervisors, taking into account and giving deference to the children's schedules for extracurricular activities and the supervisor's schedule  Nothing in this Order makes the supervisor a party to this litigation
- IT IS ORDERED that Connie V Harrison's period's of possession shall not interfere with the children's regularly scheduled extra-curricular activities and should a the supervisor's schedule along with the extra-curricular activity schedules of the children not permit a 4 hour visitation on Saturday, Connie V Harrison shall be awarded 4 hour visitation on the Sunday immediately following the Saturday visitation that Connie V Harrison was supposed to have had with the children, taking into account and giving deference to the children's schedules for extracurricular activities and the supervisor's schedule  Should the visitation be impermissible due to scheduling conflicts of the supervisor and the children's extracurricular activities on both Saturday and Sunday on a weekend following the second and fourth Friday of a month, Connie V Harrison may schedule with the supervisor a period of 4 hour possession and access on the Saturday following the Fifth Friday of a month
- Connie V Harrison is responsible for scheduling all periods of possession with the supervisor and obtaining the children's extra-curricular schedule from Clifford L Harrison for the intended period of possession at least 7 days in advance of the intended visit and must provide notice of her intended supervised visitation period of possession to Clifford L Harrison in writing
- Connie V Harrison enroll in the Children 4 Tomorrow LEAP Program within 45 days from the date of this rendition and to complete the 4 course program within 6 months of this rendition  Connie Harrison is ORDERED to pay 100% of the costs of enrolling in and attending said program  Within seven (7) days of receiving the certificate of completion of this course, Connie Harrison is ORDERED file the certificate of completion at the end of the course with the District Clerk of Harris County and identify the appropriate cause number for the clerk to file the certificate so that the certificate can be contained within the Court's file of this case AND Connie Harrison is ordered to send a copy of the certificate of completion to Ms Patricia Wicoff's office
- Based upon the parties' mutual agreement through testimony, that mutual injunctions enjoining and prohibiting the parties as follows
    - A party is prohibited from being present at Second Baptist School for any reason unless it is during a parent's period of possession if the children are enrolled in Second Baptist School
- Due to the parties' actions, the Mutual Injunction enjoining both parties as follows
    - Making disparaging remarks about the other parent or the other parent's family in the presence of the children or allowing the children to remain in the presence of any third-party making such remarks
    - Discussing this litigation or any future litigation regarding SAPCR issues related to the children subject of this suit, with the children subject of the suit, or allowing the children to remain in the presence of any third-party making such remarks
- The court will dispense of a bond for the injunctions
- Clifford L Harrison shall maintain health insurance through his employer or through private insurance at his sole cost and the parties will spilt the cost of uninsured medical, dental or mental health costs of the children with Clifford L Harrison paying 50% and Connie V Harrison paying 50%
- Connie V Harrison shall pay child support for the benefit of the children based upon net monthly income of $2,482 69 at a rate of 25% for two children in the amount of $620 00 per month and once one of the children subject of this suit has emancipated, the child support shall step down to 20% of the net monthly income for the sum of $496 00 per month  The Court ORDERS that Connie V Harrison shall pay child support for the benefit of the children to Clifford L Harrison through the State Disbursement Unit in the amount of $620 00 per month, beginning on 3/1/15, and continuing on the first of each month thereafter until further order of the court or until the child emancipates  On the first day of the first month after a child subject of this suit emancipates, the Court ORDERS that Connie V Harrison shall pay child support for the benefit of the children to Clifford L Harrison through the State Disbursement Unit in the amount of $496 00 per month, and continuing on the first of each month thereafter in the sum of $496 00 per month, until further order of the court or until the next child subject of this suit emancipates  On the first day of the first month after both children subject of this suit emancipate, Connie V Harrison's obligation to pay child support shall terminate
- The Court confirms as the separate property of Clifford L Harrison, the following
    - 70% interest in the Cedar Creek Home valued at $1,500, 000 00 for the value of $1,050,000 00,
    - The remaining funds on had in the Chase Brokerage Account (Transamerica),
    - The Galveston beach house, and
    - The following personal property  The baby grand piano and paintings

☐ The Court confirms as property of the children the funds each child's respective name in 529 plans and the TUGMA accounts  The Court ORDERS that Clifford L  Harrison shall have the exclusive right to manage the property of the children with respect to each child until that child emancipates

☐ The Court awards to Clifford L  Harrison as his sole and separate property and divest Connie V  Harrison of all rights to same the following
- o   100% of the community interest in the Cedar Creek Home which is 30% of the value of $1,500,000 00 for a value of $450,000 00
- o   The sum of $67,532 00 of the Hartford 401 K as of the date of divorce, together with loss and/or gains due to market fluctuation between Date of Divorce and date of rendition
- o   Furnishings, fixtures, appliances, artwork, personal effects, jewelry, and clothing in Clifford L  Harrison's possession or subject to his control
- o   Cash in Clifford L  Harrison's possession or subject to his control including funds available in financial institutions in accounts solely in Clifford L  Harrison's name

☐ The Court awards to Clifford L  Harrison as his sole and separate debt and liability the following debts and liabilities
- o   $295,000 00 in reasonable and necessary attorneys fees payable to SSBP
- o   all debts incurred solely in Clifford L  Harrison's name since the time of separation through the date of divorce
- o   Ad volorem taxes on any property awarded to Clifford L  Harrison

☐ The Court awards to Connie V  Harrison as her sole and separate property and divest Clifford L  Harrison of all rights to same the following
- o   The Lexus SUV automobile, together with the title and keys
- o   The sum of $251,000 00 minus $67,532 00 of the Hartford 401 K as of the date of divorce for the sum of $183,468 00, together with loss and/or gains due to market fluctuation between Date of Divorce and date of rendition
- o   Furnishings, fixtures, appliances, artwork, personal effects, jewelry, and clothing in Connie V. Harrison's possession or subject to hiercontrol
- o   Cash in Connie V  Harrison's possession or subject to her control including funds available in financial institutions in accounts solely in Connie V  Harrison's name

☐ The Court awards to Connie V  Harrison as her sole and separate debt and liability the following debts and liabilities
- o   $10,000 00 in reasonable and necessary attorneys fees payable to SSBP (Patricia Wicoff) on or before 5 00 p m on April 30, 2015
- o   $19,000 00 in reasonable and necessary attorneys fees payable to Heather Hughes on or before 5 00 p m  on April 30, 2015
- o   all debts incurred solely in Connie V  Harrison's name since the time of separation through the date of divorce
- o   Ad volorem taxes on any property awarded to Connie V  Harrison

☐ The parties are ordered to execute all documentation necessary to perfect the transfer of property at entry in this matter on 2/27/15

☐ The grants a judgment against Connie V  Harrison in favor of Heather Hughes in the amount of $19,000 00, to which Ms  Hughes may enforce said judgment in her own name, by all legal means, said judgment to bear interest at a legal rate

☐ The grants a judgment against Connie V  Harrison in favor of Patricia Wicoff in the amount of $10,000 00, to which Ms  Wicoff may enforce said judgment in her own name, by all legal means, said judgment to bear interest at a legal rate

☐ Connie V  Harrison to deliver to Clifford L  Harrison through his attorneys of record, Patricia Wicoff and/or Amy Harris, the boy scout badges, scout book, and boy scout sash, (the person property of the parties' son, subject of this suit) in the 311th District Court at 201 Caroline, 8th Floor, Houston, Texas 77002, at 9 00 a m  on February 27, 2015

☐ Clifford L  Harrison's claim for Malicious Criminal Prosecution is denied

☐ Clifford L  Harrison's claim for Malicious Civil Prosecution is denied

☐ Connie V  Harrison is ordered to pay the sum of $35,000 00 into the registry of the Court prior to filing an appeal in this matter and said sum is awarded to Clifford L  Harrison if the trial court's decision is affirmed

☐ Connie V  Harrison is ordered to pay the sum of $15,000 00 into the registry of the Court prior to filing writ with the Texas Supreme Court in this matter and said sum is awarded to Clifford L  Harrison if same is unsuccessful

☐ All other relief sought in this matter not specifically granted herein is hereby DENIED

ORDERED/SIGNED _____ 2/12/15

JUDGE ALICIA FRANKLIN

SERVED ON PARTIES/ATTYS OF RECORD AS FOLLOWS

_____2/27/15 at 9 00 a m __
ENTRY DATE

FAX TO MS  WICOFF  713/351-4514
EMAIL TO MS  HARRISON  CONNIE HARRISON84@GMAIL COM
FAX TO MS  HUGHES 713/463-5213

RECORDER S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**FILED**
Chris Daniel
District Clerk

APR 10 2014

Time: _____ 4:00

Harris County, Texas

By _____
Deyuty

CAUSE NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| THE MARRIAGE OF | § | |
| | § | |
| CLIFFORD LAYNE HARRISON | § | IN THE DISTRICT COURT OF |
| AND | § | |
| CONNIE VASQUEZ HARRISON | § | HARRIS COUNTY, T E X A S |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOHN ERNEST LEE HARRISON, II AND | § | |
| VICTORIA MADELINE HARRISON | § | |
| CHILDREN | § | 311TH JUDICIAL DISTRICT |

## AGREED ORDER ON PARENT-CHILD ISSUES

On January 29, 2014, the parties entered into a Mediated Settlement Agreement resolving parent-child issues for final trial in this case. Although the agreement is effective beginning January 29, 2014, and shall be incorporated into the parties' final order following a final trial on the division of property, this agreement shall be enforceable on its own terms unless modified.

Therefore, this agreed order on parent-child issues is submitted to the Court for consideration and entry.

### Appearances

Petitioner, **CLIFFORD LAYNE HARRISON**, did not appear in person but has agreed to the terms of this order as evidenced by Petitioner's signature and that of his attorneys, Patricia A. Wicoff and Amy R. Harris.

Respondent, **CONNIE VASQUEZ HARRISON**, did not appear in person but has agreed to the terms of this order as evidenced by Respondent's signature and that of her attorney, Christopher W. Martin.

The Amicus Attorney, Heather Hughes, did not appear but has agreed to the terms of this order as evidenced by her signature.

### Jurisdiction

The Court, after examining the record and the agreement of the parties and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties.

---

719239.1

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging

Page 1 of 25

*Children*

The following orders are for the safety and welfare and in the best interest of the following children:

Name:     *JOHN ERNEST LEE HARRISON, II*
Sex:     Male
Birth date:     September 2, 2000
Home state:     Texas

Name:     *VICTORIA MADELINE HARRISON*
Sex:     Female
Birth date:     July 27, 2004
Home state:     Texas

*Conservatorship*

**IT IS ORDERED** that **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON** are appointed Joint Managing Conservators of *JOHN ERNEST LEE HARRISON, II* and *VICTORIA MADELINE HARRISON.*

*Rights of Parent Conservators at All Times*

**IT IS ORDERED** that, at all times, **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON**, as parent joint managing conservators, shall each have the following rights:

1. the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

5. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6. the right to attend school activities;

7. the right to be designated on the children's records as a person to be notified in

Unofficial Copy Office of Chris Daniel District Clerk

case of an emergency;

8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

### *Duty of Conservators to Provide Information*

**IT IS ORDERED** that, at all times, **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON,** as parent joint managing conservators, shall each have the following duties:

1. the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2. the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. **IT IS ORDERED** that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. **IT IS ORDERED** that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. **WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.**

### *Rights and Duties of Parent Conservators During Periods of Possession*

**IT IS ORDERED** that, during their periods of possession **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON,** as parent joint managing conservators, shall each have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to direct the moral and religious training of the children.

## *Rights and Duties of CONNIE VASQUEZ HARRISON*

**IT IS ORDERED** that **CONNIE VASQUEZ HARRISON**, as a parent joint managing conservator, shall have the following rights and duty:

1. the exclusive right to designate the primary residence of the children within Harris County, Texas;

2. the joint right, subject to the agreement of the other party, to consent to medical, dental, and surgical treatment involving invasive procedures;

**IT IS ORDERED** that Dr. Nicholas Lindsay shall remain the children's primary care pediatrician.

3. the joint right, subject to the agreement of the other party, to consent to psychiatric and psychological treatment of the children and in the event the parties cannot agree then the children's primary care pediatrician, Dr. Nicholas Lindsay, shall make the final decision;

4. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

5. the joint right, subject to the agreement of the other party, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

6. the joint right, subject to the agreement of the other party, to consent to marriage and to enlistment in the armed forces of the United States;

7. the exclusive right to make decisions concerning the children's education, subject to the following provision regarding Second Baptist School;

**IT IS ORDERED** that *JOHN ERNEST LEE HARRISON, II* and *VICTORIA MADELINE HARRISON* shall continue to attend Second Baptist School as long as **CLIFFORD LAYNE HARRISON** pays the annual tuition, including other required costs, for the children to attend.

8. except as provided by section 264.0111 of the Texas Family Code, the joint right, subject to the agreement of the other party, to the services and earnings of the children;

9. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the joint right, subject to the agreement of the other party, to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

Unofficial Copy Office of Chris Daniel District Clerk

## _Rights and Duties of CLIFFORD LAYNE HARRISON_

**IT IS ORDERED** that **CLIFFORD LAYNE HARRISON**, as a parent temporary joint managing conservator, shall have the following rights and duty:

1.      the joint right, subject to the agreement of the other party, to consent to medical, dental, and surgical treatment involving invasive procedures;

**IT IS ORDERED** that Dr. Nicholas Lindsay shall remain the children's primary care pediatrician.

2.      the joint right, subject to the agreement of the other party, to consent to psychiatric and psychological treatment of the children and in the event the parties cannot agree then the children's primary care pediatrician, Dr. Nicholas Lindsay, shall make the final decision;

3.      the joint right, subject to the agreement of the other party, to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

4.      the joint right, subject to the agreement of the other party, to consent to marriage and to enlistment in the armed forces of the United States;

5.      except as provided by section 264.0111 of the Texas Family Code, the joint right, subject to the agreement of the other party, to the services and earnings of the children;

6.      except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the joint right, subject to the agreement of the other party, to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

The Court finds that, in accordance with section 153.001 of the Texas Family Code, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the child, and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. **IT IS ORDERED** that the primary residence of the children shall be Harris County, Texas, and the parties shall not remove the children from Harris County, Texas for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

Unofficial Copy Office of Chris Daniel District Clerk

---

719239.1                                                                                      Page 5 of 25

**IT IS FURTHER ORDERED** that **CONNIE VASQUEZ HARRISON** shall have the exclusive right to designate the children's primary residence within Harris County, Texas,

**IT IS FURTHER ORDERED** that this geographic restriction on the residence of the children shall be lifted if **CLIFFORD LAYNE HARRISON** wishes to move outside of Harris County, Texas.

## Possession and Access

1.      *Modified Possession Order*

**IT IS ORDERED** that each conservator shall comply with all terms and conditions of this Modified Possession Order. **IT IS ORDERED** that this Modified Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Modified Possession Order. **IT IS, THEREFORE, ORDERED:**

(a)      Definitions

1.      In this Modified Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

2.      In this Modified Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

(b)      Mutual Agreement or Specified Terms for Possession

**IT IS ORDERED** that the conservators shall have possession of the child at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, **IT IS ORDERED** that the conservators shall have possession of the child under the specified terms set out in this Modified Possession Order.

(c)      Parents Who Reside 100 Miles or Less Apart

Except as otherwise expressly provided in this Modified Possession Order, when **CLIFFORD LAYNE HARRISON** resides 100 miles or less from the primary residence of the child, **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child as follows:

1.      Weekends –

On weekends that occur during the regular school term, beginning at the

time the child's school is dismissed, on the first, third, and fifth Friday of each month and ending at the time the child's school resumes after the weekend.

On weekends that do not occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

2.      Weekend Possession Extended by a Holiday –

Except as otherwise expressly provided in this Modified Possession Order, if a weekend period of possession by **CLIFFORD LAYNE HARRISON** begins on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Friday during the summer months when school is not in session, that weekend period of possession shall begin at the time the child's school is dismissed on the Thursday immediately preceding the student holiday or teacher in-service day and 6:00 p.m. on the Thursday immediately preceding the federal, state, or local holiday during the summer months.

Except as otherwise expressly provided in this Modified Possession Order, if a weekend period of possession by **CLIFFORD LAYNE HARRISON** ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

3.      Mondays - On Mondays following the 1st and 3rd Fridays of each month during the regular school term, beginning at the time the child's school is dismissed and ending at the time the child's school resumes on the following Tuesday.

4.      Thursdays - On Thursdays of each week during the regular school term, beginning at the time the child is dismissed from school and ending at the time the child is returned to school ~~the following morning.~~ *after that Thursday.*

5.      Spring Vacation in Even-Numbered Years - In even-numbered years, beginning at the time the child's school is dismissed for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

6.      Extended Summer Possession by **CLIFFORD LAYNE HARRISON** –

With Written Notice by April 1 - If **CLIFFORD LAYNE HARRISON** gives **CONNIE VASQUEZ HARRISON** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **CLIFFORD LAYNE HARRISON** shall have possession of the child for thirty days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m on each applicable day, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Without Written Notice by April 1 - If **CLIFFORD LAYNE HARRISON** does not give **CONNIE VASQUEZ HARRISON** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **CLIFFORD LAYNE HARRISON** shall have possession of the child for thirty consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 31.

Notwithstanding the Thursday periods of possession during the regular school term and the weekend periods of possession ORDERED for **CLIFFORD LAYNE HARRISON**, it is expressly ORDERED that **CONNIE VASQUEZ HARRISON** shall have a superior right of possession of the child as follows:

1.      Spring Vacation in Odd-Numbered Years - In odd-numbered years, beginning at the time the child's school is dismissed for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

2.      Summer Weekend Possession by **CONNIE VASQUEZ HARRISON** - If **CONNIE VASQUEZ HARRISON** gives **CLIFFORD LAYNE HARRISON** written notice by April 15 of a year, **CONNIE VASQUEZ HARRISON** shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of the extended summer possession by **CLIFFORD LAYNE HARRISON** in that year, provided that **CONNIE VASQUEZ HARRISON** picks up the child from **CLIFFORD LAYNE HARRISON** and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

3.      Extended Summer Possession by **CONNIE VASQUEZ HARRISON** - If **CONNIE VASQUEZ HARRISON** gives **CLIFFORD LAYNE HARRISON** written notice by April 15 of a year or gives **CLIFFORD LAYNE HARRISON** fourteen days' written

notice on or after April 16 of a year, **CONNIE VASQUEZ HARRISON** may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by **CLIFFORD LAYNE HARRISON** shall not take place in that year, provided that the weekend so designated does not interfere with **CLIFFORD LAYNE HARRISON**'s period or periods of extended summer possession or with Father's Day possession.

(d)     Parents Who Reside More Than 100 Miles Apart

Except as otherwise expressly provided in this Modified Possession Order, when **CLIFFORD LAYNE HARRISON** resides more than 100 miles from the residence of the child, **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child as follows:

1.     Weekends - Unless **CLIFFORD LAYNE HARRISON** elects the alternative period of weekend possession described in the next paragraph, **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child on weekends that occur during the regular school term, beginning at the time the child's school is dismissed, on the first, third, and fifth Friday of each month and ending at the time the child's school resumes after the weekend, and on weekends that do not occur during the regular school term, beginning at 6:00 p.m. on the first, third and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child not more than one weekend per month of **CLIFFORD LAYNE HARRISON**'s choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. **CLIFFORD LAYNE HARRISON** may elect an option for this alternative period of weekend possession by giving written notice to **CONNIE VASQUEZ HARRISON** within ninety days after the parties begin to reside more than 100 miles apart. If **CLIFFORD LAYNE HARRISON** makes this election, **CLIFFORD LAYNE HARRISON** shall give **CONNIE VASQUEZ HARRISON** fourteen days' written or telephonic notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, the child's birthday, and Mother's Day possession below.

2.     Weekend Possession Extended by a Holiday –

Except as otherwise expressly provided in this Modified Possession Order, if a weekend period of possession by **CLIFFORD LAYNE HARRISON** begins

on a student holiday or a teacher in-service day that falls on a Friday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday during the summer months when school is not in session, that weekend period of possession shall begin at the time the child's school is dismissed on the Thursday immediately preceding the student holiday or teacher in-service day and 6:00 p.m. on the Thursday immediately preceding the federal, state, or local holiday during the summer months

Except as otherwise expressly provided in this Modified Possession Order, if a weekend period of possession by **CLIFFORD LAYNE HARRISON** ends on or is immediately followed by a student holiday or a teacher in-service day that falls on a Monday during the regular school term, as determined by the school in which the child is enrolled, or a federal, state, or local holiday that falls on a Monday during the summer months when school is not in session, that weekend period of possession shall end at 6:00 p.m. on that Monday.

3. Spring Vacation in All Years - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

4. Extended Summer Possession by **CLIFFORD LAYNE HARRISON** –

With Written Notice by April 1 - If **CLIFFORD LAYNE HARRISON** gives **CONNIE VASQUEZ HARRISON** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **CLIFFORD LAYNE HARRISON** shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m. on each applicable day, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

Without Written Notice by April 1 - If **CLIFFORD LAYNE HARRISON** does not give **CONNIE VASQUEZ HARRISON** written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, **CLIFFORD LAYNE HARRISON** shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

Notwithstanding the weekend periods of possession **ORDERED** for **CLIFFORD LAYNE HARRISON**, it is expressly **ORDERED** that **CONNIE VASQUEZ HARRISON** shall have a superior right of possession of the child as follows:

Unofficial Copy - Office of Chris Daniel District Clerk

1. Summer Weekend Possession by **CONNIE VASQUEZ HARRISON** - If **CONNIE VASQUEZ HARRISON** gives **CLIFFORD LAYNE HARRISON** written notice by April 15 of a year, **CONNIE VASQUEZ HARRISON** shall have possession of the child on any one weekend beginning at 6:00 p.m. on Friday and ending at 6:00 p.m. on the following Sunday during any one period of possession by **CLIFFORD LAYNE HARRISON** during **CLIFFORD LAYNE HARRISON**'s extended summer possession in that year, provided that if a period of possession by **CLIFFORD LAYNE HARRISON** in that year exceeds thirty days, **CONNIE VASQUEZ HARRISON** may have possession of the child under the terms of this provision on any two nonconsecutive weekends during that period and provided that **CONNIE VASQUEZ HARRISON** picks up the child from **CLIFFORD LAYNE HARRISON** and returns the child to that same place and that the weekend so designated does not interfere with Father's Day possession.

2. Extended Summer Possession by **CONNIE VASQUEZ HARRISON** - If **CONNIE VASQUEZ HARRISON** gives **CLIFFORD LAYNE HARRISON** written notice by April 15 of a year, **CONNIE VASQUEZ HARRISON** may designate twenty-one days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, during which **CLIFFORD LAYNE HARRISON** shall not have possession of the child, provided that the period or periods so designated do not interfere with **CLIFFORD LAYNE HARRISON**'s period or periods of extended summer possession or with Father's Day possession. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.

(e) Holidays Unaffected by Distance

Notwithstanding the weekend and Thursday periods of possession of **CLIFFORD LAYNE HARRISON**, **CONNIE VASQUEZ HARRISON** and **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child as follows:

1. Christmas Holidays in Even-Numbered Years - In even-numbered years, **CONNIE VASQUEZ HARRISON** shall have the right to possession of the child beginning at the time the child's school is dismissed for the Christmas school vacation and ending at 9:00 p.m. on December 26, and **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child beginning at 9:00 p.m. on December 26 and ending at the time school resumes after that Christmas school vacation.

2. Christmas Holidays in Odd-Numbered Years - In odd-numbered years, **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child

Unofficial Copy Office of the Harris District Clerk

beginning at the time the child's school is dismissed for the Christmas school vacation and ending at 9:00 p.m. on December 26, and **CONNIE VASQUEZ HARRISON** shall have the right to possession of the child beginning at 9:00 p.m. on December 26 and ending at the time school resumes after that Christmas school vacation.

3. Thanksgiving in Even-Numbered Years - In even-numbered years, **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child beginning at the time the child's school is dismissed for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

4. Thanksgiving in Odd-Numbered Years - In odd-numbered years, **CONNIE VASQUEZ HARRISON** shall have the right to possession of the child beginning at the time the child's school is dismissed for the Thanksgiving holiday and ending at 6:00 p.m. on the Sunday following Thanksgiving.

5. Child's Birthday - If a parent is not otherwise entitled under this Modified Possession Order to present possession of a child on the child's birthday, that parent shall have possession of the child and the child's minor siblings beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the children from the other parent's residence and returns the children to that same place.

6. Father's Day - **CLIFFORD LAYNE HARRISON** shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at 8:00 a.m. on the Monday after Father's Day, provided that if **CLIFFORD LAYNE HARRISON** is not otherwise entitled under this Modified Possession Order to present possession of the child, he shall pick up the child from **CONNIE VASQUEZ HARRISON**'s residence and return the child to that same place.

7. Mother's Day - **CONNIE VASQUEZ HARRISON** shall have the right to possession of the child each year, beginning at the time the child's school is dismissed on the Friday preceding Mother's Day and ending at the time the child's school resumes after Mother's Day, provided that if **CONNIE VASQUEZ HARRISON** is not otherwise entitled under this Modified Possession Order to present possession of the child, she shall pick up the child from **CLIFFORD LAYNE HARRISON**'s residence and return the child to that same place.

(f) Undesignated Periods of Possession

**CONNIE VASQUEZ HARRISON** shall have the right of possession of the child at all other times not specifically designated in this Modified Possession Order for **CLIFFORD LAYNE HARRISON**.

(g)      General Terms and Conditions

Except as otherwise expressly provided in this Modified Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.      Surrender of Child by **CONNIE VASQUEZ HARRISON** - **CONNIE VASQUEZ HARRISON** is **ORDERED** to surrender the child to **CLIFFORD LAYNE HARRISON** at the beginning of each period of **CLIFFORD LAYNE HARRISON**'s possession at the residence of **CONNIE VASQUEZ HARRISON** or Second Baptist School when applicable.

If a period of possession by **CLIFFORD LAYNE HARRISON** begins at the time the child's school is dismissed, **CONNIE VASQUEZ HARRISON** is **ORDERED** to surrender the child to **CLIFFORD LAYNE HARRISON** at the beginning of each such period of possession at the school in which the child is enrolled. If the child is not in school, **CLIFFORD LAYNE HARRISON** shall pick up the child at the residence of **CONNIE VASQUEZ HARRISON** at 6:00 p.m., and **CONNIE VASQUEZ HARRISON** is **ORDERED** to surrender the child to **CLIFFORD LAYNE HARRISON** at the residence of **CONNIE VASQUEZ HARRISON** at 6:00 p.m. under these circumstances.

2.      Surrender of Child by **CLIFFORD LAYNE HARRISON** - **CLIFFORD LAYNE HARRISON** is **ORDERED** to surrender the child to **CONNIE VASQUEZ HARRISON** at the residence of ~~CLIFFORD LAYNE~~ HARRISON or Second Baptist School when applicable at the end of each period of possession.
└ *CONNIE VASQUEZ*

If a period of possession by **CLIFFORD LAYNE HARRISON** ends at the time the child's school resumes, **CLIFFORD LAYNE HARRISON** is **ORDERED** to surrender the child to **CONNIE VASQUEZ HARRISON** at the end of each such period of possession at the school in which the child is enrolled or, if the child is not in school, at the residence of **CONNIE VASQUEZ HARRISON** at 6:00 p.m.

3.      Return of Child by **CLIFFORD LAYNE HARRISON** - **CLIFFORD LAYNE HARRISON** is **ORDERED** to return the child to the residence of **CONNIE VASQUEZ HARRISON** or the school as designated in the possession order at the end of each period of possession. However, it is **ORDERED** that, if **CLIFFORD LAYNE HARRISON** moves outside of Harris County, Texas, **CLIFFORD LAYNE HARRISON** shall surrender the child to **CONNIE VASQUEZ HARRISON** at the residence of **CONNIE VASQUEZ HARRISON** at the end of each period of possession or at the children's school if the period of possession ends at the time school resumes.

4.      Return of Child by **CONNIE VASQUEZ HARRISON** - **CONNIE VASQUEZ HARRISON** is **ORDERED** to return the child to **CLIFFORD LAYNE HARRISON**, if **CLIFFORD LAYNE HARRISON** is entitled to possession of the child, at the end of each of **CONNIE VASQUEZ HARRISON**'s exclusive periods of possession, at the place designated in this Modified Possession Order.

5.      Personal Effects - Each conservator is **ORDERED** to return with the child the personal effects that the child brought at the beginning of the period of possession. *known to the child*

6.      Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. **IT IS ORDERED** that a conservator or a designated competent adult be present when the child is picked up or returned. *known to the child*

7.      Inability to Exercise Possession - Each conservator is **ORDERED** to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.      Written Notice - Written notice, including notice provided by electronic mail or facsimile, shall be deemed to have been timely made if received or, if applicable, postmarked before or at the time that notice is due.

9.      Notice to School and **CONNIE VASQUEZ HARRISON** - If **CLIFFORD LAYNE HARRISON**'s time of possession of the child ends at the time school resumes and for any reason the child is not or will not be returned to school, **CLIFFORD LAYNE HARRISON** shall immediately notify the school and **CONNIE VASQUEZ HARRISON** that the child will not be or has not been returned to school.

This concludes the Modified Possession Order.

2.      *Duration*

The periods of possession **ORDERED** above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

### Child Support

**IT IS ORDERED** that **CLIFFORD LAYNE HARRISON** is obligated to pay and shall pay to **CONNIE VASQUEZ HARRISON** child support of Two Thousand One Hundred Thirty-Seven and 50/100 ($2,137.50), with the first payment being due and payable on February 1, 2014 and a like payment being due and payable on the 1st day of each month thereafter until the first

month following the date of the earliest occurrence of one of the events specified below:

1. any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;

2. any child marries;

3. any child dies;

4. the child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or

5. any child's disabilities are otherwise removed for general purposes.

Thereafter, **CLIFFORD LAYNE HARRISON** is **ORDERED** to pay to **CONNIE VASQUEZ HARRISON** child support of One Thousand Seven Hundred Ten and No/100 Dollars ($1,710.00) per month, due and payable on the 1st day of the first month immediately following the date of the earliest occurrence of one of the events specified above for the child and a like sum of $1,710.00 due and payable on the 1st day of each month thereafter until the next occurrence of one of the events specified above for the child.

Withholding from Earnings

**IT IS ORDERED** that any employer of **CLIFFORD LAYNE HARRISON** shall be **ORDERED** to withhold from earnings for child support from the disposable earnings of **CLIFFORD LAYNE HARRISON** for the support of *JOHN ERNEST LEE HARRISON, II* and *VICTORIA MADELINE HARRISON*.

**IT IS FURTHER ORDERED** that all amounts withheld from the disposable earnings of **CLIFFORD LAYNE HARRISON** by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support **ORDERED** paid by this order through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount **ORDERED** to be paid by this order, the balance due remains an obligation of **CLIFFORD LAYNE HARRISON**, and it is hereby **ORDERED** that **CLIFFORD LAYNE HARRISON** pay the balance due directly to the state disbursement unit specified below.

On this date the Court authorized the issuance of an Income Withholding for Support.

Payment

**IT IS ORDERED** that all payments shall be made through the state disbursement unit at

Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to **CONNIE VASQUEZ HARRISON** for the support of the children. **IT IS ORDERED** that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

## Change of Employment

**IT IS FURTHER ORDERED** that **CLIFFORD LAYNE HARRISON** shall notify this Court and **CONNIE VASQUEZ HARRISON** by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of **CLIFFORD LAYNE HARRISON** and the name and address of his current employer, whenever that information becomes available.

## Clerk's Duties

**IT IS ORDERED** that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, **CONNIE VASQUEZ HARRISON, CLIFFORD LAYNE HARRISON**, or an attorney representing **CONNIE VASQUEZ HARRISON** or **CLIFFORD LAYNE HARRISON**, the clerk of this Court shall cause a certified copy of the Income Withholding for Support to be delivered to any employer.

## Suspension of Withholding from Earnings

The Court finds that good cause exists that no order to withhold from earnings for child support should be delivered to any employer of **CLIFFORD LAYNE HARRISON** as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to **CONNIE VASQUEZ HARRISON**. For the purpose of this provision, a delinquency has occurred if **CLIFFORD LAYNE HARRISON** has been in arrears for an amount due for more than thirty days or the amount of the arrearages equals or is greater than the amount due for a one-month period. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to **CONNIE VASQUEZ HARRISON**, the clerk shall deliver the order to withhold earnings as provided above.

ACCORDINGLY, **IT IS ORDERED** that, as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to **CONNIE VASQUEZ HARRISON**, all payments shall be made through the state disbursement unit and thereafter promptly remitted to **CONNIE VASQUEZ HARRISON** for the support of the children. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to **CONNIE VASQUEZ HARRISON**, all payments shall be made in accordance with the order to withhold earnings as provided above.

### *Other Child Related Provisions*

Tutoring Expenses –

The parties agree, and **IT IS THEREFORE ORDERED** that if tutoring is recommend for *JOHN ERNEST LEE HARRISON, II* and/or *VICTORIA MADELINE HARRISON* by the children's teacher, **CLIFFORD LAYNE HARRISON** shall be responsible for 100% of the costs associated with those tutoring expenses.

### *Health Care*

1.      **IT IS ORDERED** that **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON** shall each provide medical support for each child as set out in this order as additional child support for as long as the Court may order **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON** to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code.  Beginning on the day **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON**'s actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, **IT IS ORDERED** that **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON** are discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent to fully comply with those obligations before that date.

2.      Definitions -

"Health Insurance" means insurance coverage that provides basic health-care and dental services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which **CLIFFORD LAYNE HARRISON** is responsible under a medical support order that does not exceed 9 percent of **CLIFFORD LAYNE HARRISON**'s annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges.  These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

Unofficial Copy Office of Chris Daniel District Clerk

"Furnish" means:

a. to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;

b. to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c. to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3. Findings on Health Insurance Availability – Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

Health insurance is available or is in effect for the children through **CLIFFORD LAYNE HARRISON**'s employment or membership in a union, trade association, or other organization at a reasonable cost.

**IT IS FURTHER FOUND** that the following orders regarding health-care coverage are in the best interest of the children.

4. Provision of Health-Care Coverage –

As additional child support, **CLIFFORD LAYNE HARRISON** is **ORDERED** to continue to maintain health insurance for each child who is the subject of this suit that covers basic health-care and dental care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

**CLIFFORD LAYNE HARRISON** is **ORDERED** to maintain such health insurance in full force and effect on each child who is the subject of this suit as long as child support is payable for that child. **CLIFFORD LAYNE HARRISON** is **ORDERED** to convert any group insurance to individual coverage or obtain other health insurance for each child within fifteen days of termination of his employment or other disqualification from the group insurance. **CLIFFORD LAYNE HARRISON** is **ORDERED** to exercise any conversion options or acquisition of new health insurance in such a manner that the resulting insurance equals or exceeds that in effect immediately before the change.

**CLIFFORD LAYNE HARRISON** is **ORDERED** to furnish **CONNIE VASQUEZ HARRISON** and the Office of the Attorney General Child Support Division a true and correct copy of the health insurance policy or certification and a schedule of benefits within 10 days of the signing of this order. **CLIFFORD LAYNE HARRISON** is **ORDERED** to furnish **CONNIE VASQUEZ HARRISON** the

insurance cards and any other forms necessary for use of the insurance within 10 days of the signing of this order. **CLIFFORD LAYNE HARRISON** is **ORDERED** to provide, within three days of receipt by him, to **CONNIE VASQUEZ HARRISON** any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that **CONNIE VASQUEZ HARRISON** paid or incurred.

Pursuant to section 1504.051 of the Texas Insurance Code, **IT IS ORDERED** that if **CLIFFORD LAYNE HARRISON** is eligible for dependent health coverage but fails to apply to obtain coverage for the children, the insurer shall enroll the children on application of **CONNIE VASQUEZ HARRISON** or others as authorized by law.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows: **CONNIE VASQUEZ HARRISON** is **ORDERED** to pay thirty (30%) percent and **CLIFFORD LAYNE HARRISON** is **ORDERED** to pay seventy (70%) percent of the unreimbursed health-care expenses if, at the time the expenses are incurred, **CLIFFORD LAYNE HARRISON** is providing health insurance as **ORDERED**.

The party who incurs a health-care expense on behalf of a child is **ORDERED** to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The nonincurring party is **ORDERED** to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the nonincurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any child who is the subject of this suit that are incurred while child support is payable for that child.

5.      Secondary Coverage - **IT IS ORDERED** that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6.      Compliance with Insurance Company Requirements - Each party is **ORDERED** to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure the maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is **ORDERED** to use "preferred providers," or services within the health maintenance organization, if applicable. Disallowance of the bill by a health insurer shall not excuse the

Unofficial Copy Office of Chris Daniel District Clerk

obligation of either party to make payment. Excepting emergency health-care expenses incurred on behalf of the children, if a party incurs health-care expenses for the children using "out-of-network" health-care providers or services, or fails to follow the health insurance company procedures or requirements, that party shall pay all such health-care expenses incurred absent (1) written agreement of the parties allocating such health-care expenses or (2) further order of the Court.

7.    Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is **ORDERED** to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, **IT IS ORDERED** that the party who is not carrying the health insurance policy covering the children, at that party's option, may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company. Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, **CONNIE VASQUEZ HARRISON** is designated the managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is **ORDERED** to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8.    Constructive Trust for Payments Received - **IT IS ORDERED** that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the party who paid those expenses. **IT IS FURTHER ORDERED** that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9.    **WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.**

*Miscellaneous Child Support Provisions*

### No Credit for Informal Payments

**IT IS ORDERED** that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by **CLIFFORD LAYNE HARRISON** to **CONNIE VASQUEZ HARRISON** or any expenditures incurred by **CLIFFORD LAYNE HARRISON** during **CLIFFORD LAYNE HARRISON**'s periods of possession of or access to the children, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

### Support as Obligation of Estate

**IT IS ORDERED** that the provisions for child support in this decree shall be an obligation of the estate of **CLIFFORD LAYNE HARRISON** and shall not terminate on the death of **CLIFFORD LAYNE HARRISON**.  Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation.  Any remaining balance of the child support is an obligation of **CLIFFORD LAYNE HARRISON** 's estate.

### Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of **CLIFFORD LAYNE HARRISON** to **CONNIE VASQUEZ HARRISON** unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.  An obligation to pay child support under this decree does not terminate on the death of **CONNIE VASQUEZ HARRISON** but continues as an obligation to *JOHN ERNEST LEE HARRISON, II* and *VICTORIA MADELINE HARRISON.*

*Medical Notification*

Each party is **ORDERED** to inform the other party within eight (8) hours of any medical condition of the children requiring surgical intervention, hospitalization, or both.

Within 10 days after the Court signs this final order, each party is **ORDERED** to execute -

1.      all necessary releases pursuant to the Health Insurance Portability and Accountability Act (HIPAA) and 45 C.F.R. section 164.508 to permit the other conservator to obtain health-care information regarding the children; and

2.      for all health-care providers of the children, an authorization for disclosure of protected health information to the other conservator pursuant to the HIPAA and 45 C.F.R. section 164.508.

Each party is further **ORDERED** to designate the other conservator as a person to whom protected health information regarding the children may be disclosed whenever the party executes an authorization for disclosure of protected health information pursuant to the HIPAA and 45 C.F.R. section 164.508.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: **CLIFFORD LAYNE HARRISON**

| | |
|---|---|
| Social Security number: | xxxx-xx-5717 |
| TX Driver's license number: | xxxxx572 |
| Current residence address: | 5364 Cedar Creek, Houston, Texas |
| Mailing address: | 1415 Louisiana, Suite 3700, Houston, Texas 77002 |
| Home telephone number: | 281-782-9169 |
| Name of employer: | Harrison, Bettis & Staff, LLP |
| Address of employment: | 1415 Louisiana, Suite 3700, Houston, Texas 77002 |
| Work telephone number: | 713-843-7900 |

Name: **CONNIE VASQUEZ HARRISON**

| | |
|---|---|
| Social Security number: | xxxx-xx- 4374 |
| TX Driver's license number: | xxxxx686 |
| Current residence address: | 5773 Woodway Dr., Ste. 156, Houston, Texas 77057 |
| Mailing address: | 5773 Woodway Dr., Ste. 156, Houston, Texas 77057 |
| Home telephone number: | 713-960-1737 |
| Name of employer: | N/A |
| Address of employment: | N/A |
| Work telephone number: | N/A |

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

Unofficial Copy Office of Chris Daniel District Clerk

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 201 Caroline, Houston, Texas 77002. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

## Permanent Injunctions as to Persons

The Court finds that, because of the conduct of **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON**, a permanent injunction against them should be granted as appropriate relief because there is no adequate remedy at law.

The permanent injunction granted below shall be effective immediately and shall be binding on **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON**; on their agents, servants, employees, and attorneys; and on those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

**IT IS ORDERED AND DECREED** that **CLIFFORD LAYNE HARRISON** and **CONNIE VASQUEZ HARRISON** are permanently enjoined from:

1. Making disparaging remarks about the other party or the other party's family within the presence of the children;
2. Discussing this divorce litigation, or any issues surrounding this litigation with the parties' children; and

3. Sleeping with the children while the children are in that party's possession except when either party it traveling with the children.

## Amicus Attorneys Fees

The parties agree and **IT IS THEREFORE ORDERED** that **CLIFFORD LAYNE HARRISON** shall be responsible for 100% of the remaining outstanding attorneys fees owed to the Amicus Attorney, Heather Hughes.

## Date of Judgment

SIGNED on _____April 10_____ ,2014.

_____
JUDGE PRESIDING

Unofficial Copy Office of Chris Daniel District Clerk

APPROVED AS TO FORM ONLY:

*Schlanger, Silver, Barg & Paine, LLP*

By:_____
      Patricia A. Wicoff
      State Bar No. 21422500
      Amy R. Harris
      State Bar No. 24041057
      Attorneys for Petitioner
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
Telephone:    (713) 735-8514
Facsimile:    (713) 351-4514
pwicoff@ssbplaw.com (Non-service emails)
aharris@ssbplaw.com (Non-service emails)
famlawservice@ssbplaw.com (Email service only)

*Martin, Disiere, Jefferson & Wisdom*

By:_____
      Christopher W. Martin
      State Bar No.
      Attorney for Respondent
808 Travis St., 20th Floor
Houston, Texas 77002
Telephone:    (713) 632-1700
Facsimile:    (713) 222-0101
martin@mdjwlaw.com

*Law Office of Heather M. Hughes*

By: _____
      Heather M. Hughes
      State Bar No. 00796794
      Amicus Attorney
952 Echo Lane, Suite 475
Houston, Texas 77024
Telephone:    (713) 463-5505
Facsimile:    (713) 463-5213
hhughes@hmhugheslaw.com

Unofficial Copy Office of Chris Daniel District Clerk

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. 2006-68864

| | | |
|---|---|---|
| IN THE INTEREST OF | ) | IN THE DISTRICT COURT |
| | ) | |
| J.E.L.H., II, | ) | |
| AND | ) | HARRIS COUNTY, TEXAS |
| V.M.H., | ) | |
| | ) | |
| MINOR CHILDREN | ) | 311TH JUDICIAL DISTRICT |

_____

**REQUESTED EXCERPTS OF REPORTER'S RECORD**

_____

On the 10th day of April, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Tom Stansbury, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

**APPEARANCES**

PATRICIA A. WICOFF
SBOT NO. 21422500
AMY HARRIS
SBOT NO. 24041057
Attorneys-at-Law
SCHLANGER, SILVER, BARG & PAINE, L.L.P.
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
Telephone:  (713) 785-1700
Counsel for Clifford Harrison


DAVID M. MEDINA
SBOT NO. 00000088
Attorney-at-Law
5300 Memorial, Suite 890
Houston, Texas 77007
Telephone:  (713) 653-3147
Counsel for Connie Vasquez Harrison


HEATHER HUGHES
SBOT NO. 00796794
Attorney-at-Law
952 Echo Lane, Suite 475
Houston, Texas 77024
Telephone:  (713) 463-5505
Amicus Attorney for the Minor Children


HEATHER C. DANIELS
SBOT NO. 24065115
Attorney-at-Law
LILLY, NEWMAN & VAN NESS, L.L.P.
3355 W. Alabama, Suite 444
Houston, Texas 77098
Telephone:  (713) 966-4444
Appearing for Bobby Newman, Attorney-at-Law

INDEX

VOLUME 1

REQUESTED EXCERPTS OF REPORTER'S RECORD

April 10, 2014

|  | PAGE | VOL. |
|---|---|---|
| First Excerpt of Reporter's Record .......... | 4 | 1 |
| Start of Second Excerpt ..................... | 6 | 1 |
| Ruling on Motion to Set Aside Rendition ..... | 6 | 1 |
| Ruling on Mediated Settlement Agreement .... | 19 | 1 |
| Start of Third Excerpt ...................... | 26 | 1 |
| Reporter's Certificate ...................... | 33 | 1 |

(REQUESTED EXCERPTS OF REPORTER'S RECORD)

*THE COURT:* Okay. Counsel, if you will, tell me who represents Petitioner.

*MS. WICOFF:* Your Honor, Patricia A. Wicoff and Amy Harris represent Mr. Clifford Layne Harrison, and we are the Petitioner in the underlying divorce. We're also the party that has the motions before the Court today.

*THE COURT:* Okay. The Respondent?

*MR. MEDINA:* I'm David Medina on behalf of Connie Harrison. Texas Bar Number 88.

*MS. HUGHES:* Your Honor, I'm Heather Hughes, the amicus attorney for the children.

*THE COURT:* Thank you.

*MS. DANIELS:* And my name is Heather Daniels, and I'm here for Bobby Newman on the limited issue of his interest in the Judge's current order.

*THE COURT:* In what?

*MS. DANIELS:* He has a -- they're trying to set aside the Judge's rendition, and he has -- he was awarded attorney's fees in that. So he has an interest in that order.

*MS. WICOFF:* Well, Your Honor, he's not the attorney of record. I don't know why anyone that's not the attorney of record would be addressing

the Court with regard to any of these issues. If he has an interest in the order, then perhaps he should file an intervention like everyone else would; but I would object to anyone addressing the Court that is not an attorney of record for one of the parties in this matter, whether they have an interest or not. It's inappropriate.

THE COURT: What motions do you have, Counsel? Ms. Wicoff?

MS. WICOFF: Your Honor, I have a Motion to Set Aside an Alleged Rendition. I have -- that was file marked March 31st by the clerk in this matter. I have a Motion to Enter a Mediated Settlement Agreement. I have a Motion for Preferential Trial Setting. I also have set for today a Motion for Severance; but I'm not moving forward on that severance today, Judge.

THE COURT: Are there any other motions set for today by anyone else or any other --

MS. WICOFF: No, sir, there are not.

THE COURT: Okay. We've got a Motion to Set Aside Rendition, a Motion to Enter an MSA and a Motion for Preferential Trial Setting; and I guess they need to go in that order probably. Correct?

MS. WICOFF: I think that's probably

correct, Judge.

THE COURT: All right. Please proceed, ma'am.

MS. WICOFF: Your Honor, I'm going to provide you a timeline which will be a summary of my argument; and I'm providing a copy to Mr. Medina. I've provided a copy to Ms. Hughes.

The rendition in question, Judge, is a result of a hearing on February the 12th and February the 14th. It was conducted before Judge Pratt.

(CONCLUSION OF FIRST REQUESTED EXCERPT)

*****

(START OF SECOND REQUESTED EXCERPT)

THE COURT: Let's stand in recess for five minutes. Y'all stay close.

(*Recess taken*)

THE COURT: The Motion to Set Aside the Rendition of March 31st, 2014 is granted. Well, I had March 31st on my notes here.

MS. WICOFF: That's the file date, Judge.

THE COURT: It was filed that date, and the stamp date on the signature line for Judge Pratt is March 26th. That is the rendition that is

set aside.

MS. WICOFF: Thank you, Judge.

MR. MEDINA: Thank you, Judge.

MS. WICOFF: May I pursue, then, at this point, Judge, our next motion, which would be a Motion to Enter the Mediated Settlement Agreement?

And, Judge, by way of just chronological, this case was mediated in January.

MS. HARRIS: 29th.

MS. WICOFF: Actually, I'll have Ms. Harris do it because she was at the mediation. So I'll have her address the entry and the *Lee* case.

MS. HARRIS: Judge, actually, Judge Pratt had ordered the parties to mediation back in September. I was actually the only lawyer that objected at that time because we had previously mediated this case two or three or possibly even four times. The Judge ordered us to mediate anyway, and so we did. We scheduled mediation.

We mediated this case, I believe, on January 29th, earlier this year.

At that mediation Ms. Harrison was there with her counsel at the time, Mr. Newman. Mr. Harrison and I were there. The amicus attorney was there. And, Judge, we signed off on a Mediated

Settlement Agreement that day. We have prepared an order that complies with the provisions of the Mediated Settlement Agreement; and, Judge, we just want to get that entered. It only pertains to the children's issues, with the exception of one thing. There's only one issue that's not resolved by that Mediated Settlement Agreement, and that is the right or the duty to manage the children's college accounts, which we reserved to try at a later time. Other than that, every provision that deals with the children is -- is within that Mediated Settlement Agreement, and we have an order in that regard.

*THE COURT:* Mr. Medina.

*MR. MEDINA:* Judge, the -- the MSA should be set aside because case law provides --

*MS. HUGHES:* Your Honor, I'm going to object. I don't know that that's before the Court today.

*MS. WICOFF:* There's no motion --

*MR. MEDINA:* Excuse me.

*MS. WICOFF:* -- to set aside before the Court today, Judge.

*MR. MEDINA:* Judge, I had the privilege of sitting on the Texas Supreme Court for eight years; and during that period of time, counsel

is given 20 minutes on one side, 20 minutes on the other side without interruption. I would expect the same courtesy here at this bar. I'm responding to --

*THE COURT:* I'll endeavor in that direction, Mr. Medina.

*MR. MEDINA:* Thank you.

*THE COURT:* At this point, I'm taking what you're saying as a background as to why the motion to enter should be denied.

*MR. MEDINA:* Thank you. Thank you, Judge.

It should be denied because my client was subjected to domestic violence, and that's -- that alone is enough to set aside these agreements; and quite frankly, Judge, that should have been conveyed to her before all of everybody's time and resources were wasted.

*THE COURT:* Conveyed to your client?

*MR. MEDINA:* Yes, sir. She should have known that going into that; but, you know --

Excuse me, please.

But that aside, the case law allows these to be set aside. Now this agreement, as I understand it, in speaking with her counsel, lead counsel, it's substantially agreed to. There's some

part that she doesn't agree to; but, you know, either we set it aside or we go back to arbitration and try to get -- get the details worked out. That's my response to that.

In regarding the ad litem, Judge, I didn't want to raise this here; but there is a motion to remove the ad litem, and that -- that motion needs to be heard at some point in the future. And my --

THE COURT: When was that motion filed? Do you recall?

MS. VASQUEZ HARRISON: April.

MR. MEDINA: April of last year, Judge.

THE COURT: Okay.

MR. MEDINA: For whatever reason, that motion is still pending; but that needs to be reurged, and I think the lead counsel in this case will reurge that at some time.

Judge, in the Texas Rules of Civil Procedure 153.0071(e-1) supports -- supports that.

THE COURT: I apologize. Give me about two minutes. I'll be right back.

MR. MEDINA: Thank you, Judge.

(*Recess taken*)

THE COURT: I apologize.

Mr. Medina, did you answer me on when that was filed? Yeah, we did. We got that one. Where were we after the motion to remove the ad litem -- or the amicus?

*MS. HUGHES:* 2013, I believe.

*THE COURT:* Okay.

*MS. HARRIS:* Judge, I can respond.

First of all, the motion to remove the amicus, Judge, was filed by Ms. Harrison's now lead counsel who was her appellate counsel; but the two family law lawyers that represented Ms. Harrison after that point have both declined to go forward on that motion. That's why it's not been urged before the Court.

Secondly, Judge, I think Mr. Medina was arguing that the Court should consider setting aside the Mediated Settlement Agreement because they allege that she was the victim of family violence. Judge, 153.0071(e-1) and (e-2) specifically say that a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and the agreement is not in the best interest.

Further, Judge, I would argue that at this point in time, they can't ask the Court to set

aside the Mediated Settlement Agreement.  There was no objection to mediation.  I was the only lawyer here.  I think there was one, two, three, four, five lawyers here that day.  I was the only lawyer that objected to mediation.  Ms. Harrison nor any of her counsel objected to mediation.  We went to mediation, an order was signed.  I think they have now waived the right to ask the Court to now set it aside.  And that, Judge, would be further 153.0071 beginning with (f).

*MR. MEDINA:*  There could be no waiver on domestic violence.

*THE COURT:*  What is the effect?  Is granting relief contained or pursuant to the Mediated Settlement Agreement automatic if the Mediated Settlement Agreement is entered today?

*MS. WICOFF:*  Oh, it's already been filed with the Court, Judge.

*THE COURT:*  Well, what does Motion to Enter the MSA mean?

*MS. WICOFF:*  We need an order, and maybe Ms. Hughes can address why we need an order.

*THE COURT:*  An order adopting the contents --

*MS. WICOFF:*  That's correct.

THE COURT: -- of the MSA?

MS. WICOFF: That's correct.

THE COURT: Ms. Hughes.

MS. HUGHES: That is correct, Your Honor. They had filed a motion to enter -- they meaning Mr. Harrison's -- some time ago and then there were issues developing at the children's school with who was to pick up on what days and it was becoming an issue with the school. So I filed an emergency motion to enter as the amicus to try and narrow that down; and so that's what we appeared on, on March 26th. And the Court gave us a very limited order on possession and access to get us through the school year, so-to-speak. It doesn't address holidays or summer because my immediate concern was so that we could tell the school this is what you follow.

THE COURT: And that was pursuant to a hearing in open court on March 26th?

MS. HUGHES: Yes.

THE COURT: Why didn't she -- why did she limit the contents of the MSA that she adopted? Why did she adopt only part of it?

MS. HUGHES: My understanding was because there had been a motion filed contesting the

MSA by Ms. Harrison, and she said we'll get into all of that later.

THE COURT: Is that motion still pending?

MS. HUGHES: My understanding is it's pending. I don't know that it's been set.

MS. WICOFF: It's never been set, Judge.

MS. HARRIS: It's not been set, Judge.

And, Judge, I just -- I also want to let the Court know that this alleged family violence argument that they attempt to make today is from an alleged incident that happened well over eight years ago. These people have not lived under the same roof in eight years. They've been divorced for well over four years.

Further, Judge, I would just provide to the Court a copy of the Supreme Court case *In Re: Lee* which says that, Judge, when there is a Mediated Settlement Agreement that a Trial Court may not deny a Motion to Enter the Judgment on a properly executed Mediated Settlement Agreement.

MR. MEDINA: Judge, that's a very good case. The concurrence is on point. The

concurrence was written by my law school friend and former colleague Justice Guzman. It addresses essentially all issues that weren't addressed in majority opinion, and I think that's a good start to look for guidance for this type of assistance.

And, Judge, that's not an allegation on this violence. That man was arrested.

And I -- this is not evidence, Judge; but I want to hand to you a part of the text messages that -- that just is consistent with the type of language and behavior that goes on from Mr. Harrison --

*MS. HARRIS:* Judge, and I would --

*MR. MEDINA:* -- to Ms. Harrison.

*MS. HARRIS:* -- object to anything. We've not been provided that. It's not been introduced. I'm not even sure what it is.

*THE COURT:* What's the date of this? Is it all on the same date?

*MR. MEDINA:* Judge, it is on the same date. It's 5:40 a.m. This was part of an exhibit on February the 14th.

*THE COURT:* 2014?

*MR. MEDINA:* Yes, sir.

*THE COURT:* After the mediation?

*MR. MEDINA:* It's marked CH --

*MS. HARRIS:* It's after the mediation, Judge.

*MR. MEDINA:* It's marked CH135.

I just add that, Your Honor, for this domestic violence issue -- and we're not talking about, you know, Saint Paul here.

*MS. HARRIS:* Judge, they're talking about an incident that happened before January of 2006. That's how long ago they're talking about. How in the world can they come in today and say we're a victim of domestic violence and because of an alleged incident that happened more than eight years ago that's prevented me from entering into a properly executed Mediated Settlement Agreement even though I was there with counsel being advised?

*THE COURT:* Mr. Medina, it sounds to me that the -- that the Movant's arguments and requests are directly in line with Justice Guzman.

*MR. MEDINA:* They're not, Judge.

*THE COURT:* Tell me why they are not.

*MR. MEDINA:* They are not. Justice Guzman's concurrence -- the majority of that opinion was written by Justice Lehrmann. Justin Guzman's concurrence analyzes the -- the majority's opinion

and finds instances where a -- a motion like this can be set aside based on domestic violence and some other issues, and I believe the concurrence supports our position.

*THE COURT:* Okay.

*MS. HARRIS:* Judge, a part of the opinion that I think Mr. Medina is talking about, let me just read to you exactly what it says. It says: Finally Subsection (e-1), added in 2005, provides a narrow -- a narrow exception to Subsection (e)'s mandate, allowing a Court to decline to enter judgment on even a statutorily compliant Mediated Settlement Agreement if a party to the agreement was a victim of family violence, comma, the violence impaired the party's ability to make decisions; and, Judge, that the agreement is not in the best interest of the child.

How can they say that an alleged incident that may or may not have happened more than eight years ago impaired her current ability to make a decision to sign a Mediated Settlement Agreement?

*MR. MEDINA:* Judge, what that does is give the Trial Court broad discretion, broad discretion, if you find it not in the best interest of the children. Now while that incident may --

leading to his arrest may have happened years ago, this man continues to threaten her through text messages. He's threatened her the day before the mediation. He continues to threaten her, and that's what all this is about, and it's a shame that we are still here arguing about this seven years later.

*MS. HARRIS:* Judge, that -- none of that has ever been introduced into evidence at any point in time. I've never heard that until just right this very second.

And Mr. Medina, unfortunately, is wrong. It's not -- it's not broad discretion, Judge. The opinion specifically says it provides a narrow exception, not broad discretion.

*THE COURT:* Anything further on this motion?

*MR. MEDINA:* No. Thank you, Judge.

*MS. HARRIS:* Judge, I would just argue that we really need to get an order entered. There have been numerous problems with the drop off and pick up of the children, with denial of periods of possession and access.

And, Judge, the children have now been asked to leave their private school that they have been enrolled in since they began their school

careers. And, Judge, it's imperative that we get an order in place protecting the children.

MR. MEDINA: And the children -- that is all true, but that incident was caused by the husband. The police were called to remove him from the campus because he was being hostile.

MS. HARRIS: Judge, that is not true. That is absolutely not true.

THE COURT: The Court adopts the contents of the Mediated Settlement Agreement as the order of this Court.

MS. WICOFF: Your Honor, we have the order to submit, and I also have an order on vacate that I would tender to the Court. It is signed by myself.

And here is a copy of it, Mr. Medina.

THE COURT: Ms. Harris, Ms. Wicoff, did y'all give me this?

MS. HUGHES: I did, Your Honor.

THE COURT: Can I make a copy of it?

MS. HUGHES: You can have it.

MS. HARRIS: We have an extra copy.

MS. HUGHES: Judge, and in this order you will see some handwritten interlineations that I did that conform with the order that Judge Pratt

entered on March 26th that address the same issues.

THE COURT: Have all counsel seen that?

MS. HUGHES: I know they've not seen my interlineations.

THE COURT: Can y'all -- can y'all recess to counsel table --

MS. HARRIS: Yes, Judge.

THE COURT: -- and if you've got a problem with it, Mr. Medina, I want you to address that on the record; but otherwise let me type in my docket sheet.

MS. HARRIS: Yes, Judge.

(*Recess taken*)

THE COURT: We're on the record.

Mr. Medina?

MR. MEDINA: I need some guidance here, Judge. I understand your decision. My client is telling me that she understands that this was not scheduled for today, this hearing to set aside. And I also understand that she was going to bring a witness to help her support the allegation on the psychological part.

Is that correct?

MS. VASQUEZ HARRISON: Yes.

MR. MEDINA: And while I think I know a little bit about family law, I am not a family law expert. I practice civil trial law and appellate law. That's where my experience is, and I certainly don't want to be in a position where she's not getting the best counsel she needs for this hearing. And if you would indulge me, Your Honor, for a brief continuance, I don't --

THE COURT: Let me see if that was set for today, number one.

MR. MEDINA: Okay.

THE COURT: Stephanie, can you verify for me?

MS. HARRIS: What exactly are we talking about was not set?

THE COURT: The motion to adopt the MSA.

MS. HARRIS: Okay.

THE COURT: Is that what you're saying, Mr. Medina?

MR. MEDINA: Yes. Yes, Your Honor.

THE CLERK: Today it was Clifford Harrison and Connie Harrison was set -- set aside judgment. It was set for set aside.

MS. HARRIS: That was the very first

thing that we heard.

THE COURT:  Right.

MS. HARRIS:  But there were many others.

THE CLERK:  To specify, it's a motion to enforce and then a set aside judgment and other motions.

MS. HARRIS:  Right.  Judge, and it was actually file stamped on April the 4th, Judge, 2014; and it was noticed that same date, Judge, for April 10th, 2014 at 1:30 p.m.  And it was sent via e-mail, Judge, to Mr. Christopher Martin at Martin, Disiere, Jefferson & Wisdom; by e-mail to Mr. David Medina; and by e-mail to the amicus attorney, Ms. Heather Hughes.

THE COURT:  It appears to be correct, Mr. Medina, from what Ms. Hughes is showing me.  I think it was properly set for today.

MR. MEDINA:  Okay.  Thank you, Judge. May I have a moment, Judge?

THE COURT:  Sure.

(*Brief recess taken*)

MR. MEDINA:  Judge, may I make an inquiry --

THE COURT:  Yes, sir.

MR. MEDINA: -- to the clerk of the court if she has any documentation of this hearing, this part of the hearing being canceled by Judge Pratt? Do you have any notation?

THE COURT: Do you have any indication that the hearing --

MS. VASQUEZ HARRISON: On April the 26th.

MS. HUGHES: I believe I know what Ms. Harrison is referring to, Your Honor, if --

MS. VASQUEZ HARRISON: On March.

MS. HUGHES: -- the Court would like me to fill in.

THE COURT: Yes, ma'am.

MS. HUGHES: When we were down here on March 26th, at the conclusion of that hearing in the afternoon, Judge Pratt had asked the attorneys and Ms. Harrison to appear down here on today at 8:30 in the morning to get with her coordinator to get a pref setting on various motions. That kind of went away when she resigned that Friday.

MS. HARRIS: Why we weren't here at 8:30 this morning.

MS. HUGHES: And then I received notice of a handful of motions set for today at 1:30.

MS. HARRIS: In fact, Judge, I -- I would say that I believe we filed originally a motion back on -- probably on or about March 21st, and so I want to say that our hearing -- that this hearing has been set since about that time.

MS. VASQUEZ HARRISON: May I say something, Judge?

THE COURT: Yes, ma'am.

MS. VASQUEZ HARRISON: Judge, we -- Bobby Newman had withdrawn. He hadn't been paid his fees and so I had to represent myself on that afternoon and Judge Pratt canceled. She said -- she looked at her documentation -- I have 40 cases. I cannot hear you on April the 10th. On April the 10th I cannot hear the motion to set aside or the motion to enter.

THE COURT: So come down here at 8:30 to get a new date?

MS. VASQUEZ HARRISON: So she said come here at 8:30; and so then my attorney, Mr. Martin, took it off of his calendar as -- as to us having the hearing and then my two witnesses that were going to show up took it off of their calendar because we were going to get a new date at 8:30 in the morning, as Ms. Hughes said, where everybody

could attend at a future time.

THE COURT: Ma'am, I'm sure if you discussed that with Mr. Medina and with Mr. Martin, they have remedies available; but what I have before me today, it hadn't been canceled. It hadn't been reset. I understand what you're saying as a practical matter, but it hadn't been changed from 1:30 this afternoon. And based on that, I've made the ruling, and that ruling must stand at this time.

MR. MEDINA: Thank you, Judge.

THE COURT: Okay. Thank y'all.

MS. HARRIS: Judge, the only further motion that we have is our Motion for a Preferential Trial Setting.

And, Judge, I -- I understand that -- that we're in kind of a weird situation at this moment, but if I could just give the Court a flavor of kind of what we're dealing with.

Judge, this case was originally filed back in 2006. It was tried to a jury over the course of about two weeks in front of the Honorable Judge Doug Warne in March and then in April of 2010. We did get a rendition, ruling, an order signed in June of 2010. It went up on appeal. It's been back down for well over a year, Judge. It's been on remand for

well over a year.

We attempted to get Temporary Orders in place in this matter immediately following the remand in January and February of 2013.  Judge, we couldn't get anything heard until we got a Mediated Settlement Agreement a year later.  My point, Judge, is that we have got to get a trial setting in this case.

(CONCLUSION OF SECOND REQUESTED EXCERPT)

*****

(START OF THIRD REQUESTED EXCERPT)

*THE COURT:*  Y'all have a seat, if you will.  The coordinator is checking right now.  I'm going to give you a trial setting date before you leave here.

*MS. WICOFF:*  All right.  Thank you.

*MR. MEDINA:*  Thank you.

*MS. HARRIS:*  Thank you, Judge.

*MS. WICOFF:*  I'm sorry?

*MR. MEDINA:*  Here is a copy of the Fourteenth Court of Appeals opinion.  Do you have any objection?

*MS. WICOFF:*  Oh, in this case?

*MR. MEDINA:*  Yes.

*MS. VASQUEZ HARRISON:*  It's my copy.

Would you like a copy, Judge?

THE COURT: Not necessarily. Whoever had it can have it back.

MR. MEDINA: Thank you, Judge.

THE COURT: Thank you.

MS. WICOFF: All right. And did both of those other orders get signed, Judge? I didn't -- where did we end up on the --

MS. VASQUEZ HARRISON: Mr. Medina, do you have the order?

MS. WICOFF: -- MSA order? We need that MSA entered, the Temporary Orders.

MS. HARRIS: It's not a Temporary Order.

MS. VASQUEZ HARRISON: Oh, we were --

MS. WICOFF: Is that done?

MS. VASQUEZ HARRISON: The order has not been --

THE COURT: We're off the record.

(*Discussion off the record*)

THE COURT: We're back on the record.

MS. WICOFF: Judge, what the MSA says, very boilerplate language, if there are drafting disputes, those drafting disputes go back to --

THE COURT: Who was your mediator?

MS. WICOFF: -- Mr. Millard. I'm sorry?

THE COURT: Who was your mediator?

MS. WICOFF: John Millard, appointed by Judge Pratt.

THE COURT: Okay.

MS. WICOFF: And -- and we submitted an order to the other side weeks ago. We've never heard a peep about any drafting dispute, not a peep. So at this point, Judge, we've got to get an order entered for the benefit of these children so if there's any hope of their staying at Second Baptist we have a firm order signed by the Court moving forward.

MS. VASQUEZ HARRISON: Your Honor, the language is very clear. Mr. Newman -- Mr. Newman withdrew on March 14th.

MS. HARRIS: 24th.

MS. VASQUEZ HARRISON: On March 14th.

MS. WICOFF: 24th.

MS. VASQUEZ HARRISON: Okay. Well, I have not had a family attorney to help me go through -- these orders would affect my children and myself --

THE COURT: Uh-huh.

MS. VASQUEZ HARRISON: -- for, you know, 10, 20 years.

THE COURT: Or at least until your trial date coming up.

MS. VASQUEZ HARRISON: Yes, Your Honor. And so I only ask that if you -- if you did decide to not set aside the MSA, to give us the opportunity to go through that with a family law attorney, as Justice Medina have recommended, so that -- and if -- and -- and I already see several drafting that they've put words in there that are not even in the MSA.

And so -- and so I just -- I plead with the Court that -- that that -- for me to be given the opportunity to have an attorney to go through that, and if we can't discuss it amongst -- if they can't -- if we can't agree to something, to go back to Mr. Millard.

THE COURT: I understand. I understand.

Ms. Hughes.

MS. HUGHES: I have a suggestion, Your Honor, that may accomplish both ends.

What if we enter this as an Interim

Temporary Order?  If Ms. Harrison does submit drafting disputes and we can't work them out, then we're ordered back to Mr. Millard, but at least there is a governing order that covers everything moving forward.

*MS. VASQUEZ HARRISON:*  Judge, I ask -- I mean this is -- that -- that would not be -- I have sole.  Your Honor, I have sole custody. They're wanting an interim order as to joint custody.

*MS. HUGHES:*  That's what the MSA --

*THE COURT:*  Ms. Harrison, I'm going to have to interrupt you and make this statement.

Change that order to read "interim," as Ms. Hughes suggests.  Everybody approve that order unless there's some specific objections to the form, and I'll sign those orders as presented to me today.

Y'all have a seat and wait for your -- for your trial date.  Oh, let me ask one other question before you do.

Ms. Hughes, were you there for the duration of the mediation?

*MS. HUGHES:*  Absolutely, Your Honor.

*THE COURT:*  Were there issues mediated other than the issues you were involved in?

*MS. HUGHES:*  No.  Initially there

were some property discussion, but then the focus shifted entirely to the children.

THE COURT: I don't want to invade anything, but I'd like to know has property been -- property issues been mediated.

MS. HUGHES: It was discussed --

THE COURT: Ms. Wicoff, were you at the mediation -- no. Ms. Harris, you were there.

MS. HUGHES: -- but not the focus.

MS. HARRIS: No. I was, Judge.

THE COURT: Was property mediated?

MS. HARRIS: Property was discussed. I wouldn't -- I couldn't say to the Court that we actually mediated those issues.

THE COURT: Okay.

MS. HARRIS: It was discussed, but probably not negotiated very well, Judge; but it had been mediated numerous times prior to then.

THE COURT: All right. You agree, it was talked about?

MS. VASQUEZ HARRISON: They were discussed and I understand that children's issues, SAPCR issues and property, that type of bifurcation, is not allowed.

(CONCLUSION OF THIRD REQUESTED EXCERPT)

(Conclusion of requested transcriptions)

STATE OF TEXAS

COUNTY OF HARRIS

I, Marilee M. Anderson, Deputy Official Court Reporter in and for the 311th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

WITNESS MY HAND this the _____ day of _____, 2015.

_____

Marilee M. Anderson, CSR
Texas CSR 3271
Deputy Official Court Reporter
P.O. Box 6459
Kingwood, Texas 77325
Telephone: (281) 705-9268
Expiration: 12/31/2016

## CAUSE NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | § | |
| | § | |
| CLIFFORD LAYNE HARRISON | § | |
| AND | § | |
| CONNIE VASQUEZ HARRISON | § | HARRIS COUNTY, T E X A S |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOHN ERNEST LEE HARRISON, II AND | § | |
| VICTORIA MADELINE HARRISON | § | |
| CHILDREN | § | 311TH JUDICIAL DISTRICT |

## EMERGENCY MOTION FOR ENFORCEMENT OF MEDIATED SETTLEMENT AGREEMENT AND REQUEST FOR ORAL HEARING, OR ALTERNATIVELY, MOTION FOR ADDITIONAL TEMPORARY ORDERS AND TEMPORARY INJUNCTIONS

COMES NOW, CLIFFORD LAYNE HARRISON ("CLIFF"), Petitioner in the above referenced cause of action, and files this Emergency Motion for Enforcement of Mediated Settlement Agreement and Request for Oral hearing, or Alternatively, Motion for Additional Temporary Orders and Temporary Injunctions, and who would respectfully, show unto the Court as follows:

### Background

This case is a 2006 original suit that was tried to a jury in March and April 2010 and was remanded to this Court for a new trial.

On or about February 27, 2013, this Honorable Court specifically ordered that the parties continue to follow the possession and access schedule pursuant the Final Decree of Divorce signed on June 21, 2010, a copy of the Court's docket sheet entry is attached hereto as Exhibit A. Thereafter, on or about August 28, 2013, this Honorable Court ordered the parties to mediate with John Millard, a copy of the Court's order is attached hereto as Exhibit B. On or about January 29, 2014, the parties mediated with John Millard and subsequently entered into a mediated settlement agreement with regard to the children, a copy of the agreement is attached hereto as Exhibit C.

719969.1                                                                 Page 1 of 6

# I. Emergency Motion for Enforcement

### *Agreement to be Enforced*

On or about January 29, 2014, in Cause No. 2006-68864, styled *"In the Matter of the Marriage of Clifford Layne Harrison and Connie Vasquez Harrison and In the Interest of John Ernest Lee Harrison and Victoria Madeline Harrison, Children"*, In the 311th Judicial District Court, Harris County, Texas, the parties signed a Mediated Settlement Agreement, a copy of which is attached to this Motion as Exhibit C, and is incorporated by reference herein. The Mediated Settlement Agreement in relevant part as follows:

Page 4 of 5

### "III.    Possession and Access

**Dad to have an SPO with elections and additionally during the regular school year he shall have the right to possession of the children on the Monday following the 1st and 3rd Friday of each month beginning at the time the school regularly recesses and ending at the time school regularly resumes on the immediately following Tuesday."**

The Mediated Settlement Agreement as attached hereto as Exhibit C meets the statutory requirements and is immediately binding on the parties and that both parties are entitled to judgment on agreement notwithstanding another rule of law, and is thus enforceable.

### *Violations*

The Respondent, **CONNIE VASQUEZ HARRISON** repeatedly violates the parties' mediated settlement agreement by denying Petitioner possession of and access to the children.

**Violation 1:**    On February, 27, 2014, Movant was denied access to the minor child, *JOHN ERNEST LEE HARRISON*, as a result of **CONNIE VASQUEZ's** actions.

**Violation 2:**    On March 6, 2014, Movant arrived at the Second Baptist School at the time the children were dismissed from school and was denied access to the child, *VICTORIA MADELINE HARRISON* as a result of **CONNIE VASQUEZ's** actions.

### *Requested Relief*

1.    The Court make a finding that **CONNIE** has violated the parties' mediated settlement agreement and to enter an order in conformity with that finding.

2.    **CONNIE** be ordered to pay **CLIFF's** attorney's fees incurred as a result of bringing this Emergency Motion for Enforcement.

3.    **CLIFF** be awarded additional periods of possession and access with the children as make-up periods for the denied periods.

## II. Motion for Additional Temporary Orders and Temporary Injunctions

Petitioner recognizes that a mediated settlement agreement has been signed by both parties, their respective attorneys of record and the AMICUS attorney for the children in this case. However, Respondent continues to deny Petitioner access to the children in direct violation of the parties' agreement and further continues to claim that there is not an agreement.

First, this is extremely concerning to Petitioner as the children are confused and concerned about who is picking them up from school, and their plans for any given period. Further, Petitioner is being denied the right to talk with the children on the phone or communicate with them in any way at the time of the filing of this motion. This causes great concern for the immediate emotional well-being of the children. The children are well accustomed to the visitation schedule that they have had with both parents for a number of years.

Secondly, if Respondent is of the belief that there is not an agreement, Petitioner is concerned that Respondent is delusional and in need of a mental health evaluation. Respondent is a lawyer and has more experience than the average person with regard to settlement agreements, court orders, hearings, and at this point, even family law procedure and common rules.

If the Court does not enter an order that complies with the terms of the mediated settlement agreement, then Petitioner requests that the Court set a hearing to determine temporary orders and temporary injunctions.

Petitioner requests the Court, after notice and hearing, to dispense with the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions for the safety and welfare of the children subjects of this suit as deemed necessary and equitable, including but not limited to the following:

Respondent should immediately make herself available to a mental health professional designated by the Court to evaluate Respondent's mental and emotional state, and her ability to

be involved in the daily parenting of the children subjects of this suit.

Petitioner should have exclusive possession and access to the children until such time as Respondent has undergone a psychological evaluation and it is established that she is mentally capable of caring for the children. The Court should also make any other orders that are necessary to protect the children and that are found to be in the children's best interest.

Petitioner should be designated as the conservator who has the exclusive right to make decisions concerning the children's education.

Petitioner requests the Court to dispense with the necessity of a bond, and Petitioner requests that, after notice and hearing, Respondent be further restrained and enjoined, pending the further order of the Court, from:

1.      Disturbing the children or Petitioner or interfering in any way with Petitioner's possession of the children by taking or attempting to take possession of the children, directly or through any other person, from the residence, school, or any other place.

2.      Withdrawing the children from enrollment in the school or day-care facility where the children are presently enrolled.

3.      Hiding or secreting the children from Petitioner.

4.      Making disparaging remarks regarding Petitioner or Petitioner's family in the presence or within the hearing of the children.

Respondent should be ordered to pay child support, health insurance premiums for coverage on the children, and fifty percent (50%) of the children's uninsured medical expenses.

*Prayer*

Movant prays that the Court finds that Respondent has violated the terms of the parties Mediated Settlement Agreement, and that the Court award attorney's fees, expenses, costs, and interest against Respondent, and for all further relief authorized by law.

Movant further prays that the Court grant temporary orders in accordance with this motion.

Unofficial Copy Office of Chris Daniel District Clerk

Respectfully submitted,

***Schlanger, Silver, Barg & Paine, LLP***

By: _____

PATRICIA A. WICOFF
State Bar No. 21422500
AMY R. HARRIS
State Bar No. 24041057
Attorneys for Petitioner, Cliff Harrison
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
Telephone:     (713)   735-8514
Facsimile:     (713)   351-4514
pwicoff@ssbplaw.com (Non-service emails)
aharris@ssbplaw.com (Non-service emails)
famlawservice@ssbplaw.com (Email service only)

## NOTICE OF HEARING

The above motion is set for hearing on _____ at 9:30 a.m. in 311th Judicial District Court.

SIGNED on _____.

_____
Judge or Clerk

Unofficial Copy Office of Chris Daniel District Clerk

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on March 7, 2014.

Mr. Bobby K. Newman
**LILLY NEWMAN & VAN NESS, LLP**                    *via email*
3355 W. Alabama, Ste. 444
Houston, Texas 77098

Ms. Heather Hughes
**LAW OFFICE OF HEATHER M. HUGHES**                *via email*
952 Echo Lane Suite 410
Houston, Texas, 77024

_____
Patricia A. Wicoff
Amy R. Harris
Attorneys for Petitioner, Cliff Harrison

Unofficial Copy Office of Chris Daniel District Clerk

## NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | § | |
| | § | |
| CONNIE VASQUEZ HARRISON AND | § | |
| CLIFFORD HARRISON | § | HARRIS COUNTY, TEXAS |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOHN HARRISON AND | § | |
| VICTORIA HARRISON | § | |
| MINOR CHILDREN | § | 311TH JUDICIAL DISTRICT |

## EMERGENCY MOTION TO ENTER ORDER

This Emergency Motion to Enter Order is brought by Heather M. Hughes, amicus attorney, who shows in support:

1.      On or about January 29, 2014, the parties attended Court ordered mediation and reached an agreement on the majority of the children's issues. A copy of the mediated settlement agreement (MSA) was filed with the court on or about January 29, 2014.

2.      The MSA provides for conservatorship, child support and medical insurance, and specific periods of possession and access which differ slightly from those in the final decree of divorce, which is the order that the parties were to follow pursuant to a prior Court instruction/ruling prior to their agreements in the MSA.

3.      There appears to be immediate controversy regarding the periods of possession and access that the parents have with the children, including but not limited to mid-week, weekend and the upcoming spring break.

4.      Amicus Attorney is requesting that the Court enter on March 14, 2014 at 9:30 a.m. the attached Temporary Order in Suit Affecting-Parent Child Relationship (see Exhibit A as if set out fully herein). Entry of such order is necessary as a temporary order so that there is an order in place that the parties are bound by and so that the children are afforded consistency and continuity.

LAW OFFICE OF HEATHER M. HUGHES

_Heather M. Hughes_

Heather M. Hughes
State Bar No.: 00796794
952 Echo Lane, Suite 475
Houston, Texas 77024
Telephone: (713) 463-5505
Facsimile: (713) 463-5213
E-mail service:  hhughes@hmhugheslaw.com
Amicus Attorney

## Notice of Hearing

The above motion is set for hearing on March _____ 2014 at 9:30 a.m. in the 311th District Court of Harris County, Texas.

SIGNED on _____.

_____
Judge or Clerk

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure.

_Heather M. Hughes_

Heather M. Hughes

Unofficial Copy Office of Chris Daniel District Clerk

## CAUSE NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | § | |
| | § | |
| CLIFFORD LAYNE HARRISON | § | |
| AND | § | |
| CONNIE VASQUEZ HARRISON | § | HARRIS COUNTY, T E X A S |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOHN ERNEST LEE HARRISON, II AND | § | |
| VICTORIA MADELINE HARRISON | § | |
| CHILDREN | § | 311TH JUDICIAL DISTRICT |

## MOTION TO ENTER MEDIATED SETTLEMENT AND MOTION FOR
## ADDITIONAL TEMPORARY ORDERS AND TEMPORARY INJUNCTIONS

**COMES NOW, CLIFFORD LAYNE HARRISON,** Petitioner in the above referenced cause of action, and files this Motion to Mediated Settlement Agreement and Motion for Additional Temporary Orders and Temporary Injunctions, and who would respectfully, show unto the Court as follows:

### *Background*

This case is a 2006 original suit that was tried to a jury in March and April 2010 and was remanded to this Court for a new trial.

On or about February 27, 2013, this Honorable Court specifically ordered that the parties continue to follow the possession and access schedule pursuant the Final Decree of Divorce signed on June 21, 2010, a copy of the Court's docket sheet entry is attached hereto as Exhibit A. Thereafter, on or about August 28, 2013, this Honorable Court ordered the parties to mediate with John Millard, a copy of the Court's order is attached hereto as Exhibit B. On or about January 29, 2014, the parties mediated with John Millard and subsequently entered into a mediated settlement agreement with regard to the children, a copy of the agreement is attached hereto as Exhibit C.

### Agreement to be Enforced

On or about January 29, 2014, in Cause No. 2006-68864, styled *"In the Matter of the Marriage of Clifford Layne Harrison and Connie Vasquez Harrison and In the Interest of John Ernest Lee Harrison and Victoria Madeline Harrison, Children"*, In the 311th Judicial District Court, Harris County, Texas, the parties signed a Mediated Settlement Agreement, a copy of which is attached to this Motion as Exhibit C, and is incorporated by reference herein. The Mediated Settlement Agreement in relevant part as follows:

Page 4 of 5

**"III.    Possession and Access**

**Dad to have an SPO with elections and additionally during the regular school year he shall have the right to possession of the children on the Monday following the 1st and 3rd Friday of each month beginning at the time the school regularly recesses and ending at the time school regularly resumes on the immediately following Tuesday."**

The Mediated Settlement Agreement as attached hereto as Exhibit C meets the statutory requirements and is immediately binding on the parties and that both parties are entitled to judgment on agreement notwithstanding another rule of law, and is thus enforceable.

### Violations

The Respondent, **CONNIE VASQUEZ HARRISON** repeatedly violates the parties' mediated settlement agreement by denying Petitioner possession of and access to the children.

**Violation 1:**    On February, 27, 2014, Movant was denied access to the minor child, *JOHN ERNEST LEE HARRISON*, as a result of **CONNIE VASQUEZ HARRISON's** actions.

**Violation 2:**    On March 6, 2014, Movant arrived at the Second Baptist School at the time the children were dismissed from school and was denied access to the child, *VICTORIA MADELINE HARRISON* as a result of **CONNIE VASQUEZ HARRISON's** actions.

Unofficial Copy Office of this Daniel District Clerk

*Requested Relief*

1. The Court make a finding that **CONNIE VASQUEZ HARRISON** has violated the parties' mediated settlement agreement and to enter an order in conformity with that finding.

2. **CONNIE VASQUEZ HARRISON** be ordered to pay **CLIFFORD LAYNE HARRISON's** attorney's fees incurred as a result of bringing this Emergency Motion for Enforcement.

3. **CLIFFORD LAYNE HARRISON** be awarded additional periods of possession and access with the children as make-up periods for the denied periods.

## II. Motion for Additional Temporary Orders and Temporary Injunctions

Petitioner recognizes that a mediated settlement agreement has been signed by both parties, their respective attorneys of record and the AMICUS attorney for the children in this case. However, Respondent continues to deny Petitioner access to the children in direct violation of the parties' agreement and further continues to claim that there is not an agreement.

First, this is extremely concerning to Petitioner as the children are confused and concerned about who is picking them up from school, and their plans for any given period. Further, Petitioner is being denied the right to talk with the children on the phone or communicate with them in any way at the time of the filing of this motion. This causes great concern for the immediate emotional well-being of the children. The children are well accustomed to the visitation schedule that they have had with both parents for a number of years.

Secondly, if Respondent is of the belief that there is not an agreement, Petitioner is concerned that Respondent is delusional and in need of a mental health evaluation. Respondent is a lawyer and has more experience than the average person with regard to settlement agreements, court orders, hearings, and at this point, even family law procedure and common rules.

If the Court does not enter an order that complies with the terms of the mediated settlement agreement, then Petitioner requests that the Court set a hearing to determine temporary orders and temporary injunctions.

Petitioner requests the Court, after notice and hearing, to dispense with the necessity of a bond and to make temporary orders and issue any appropriate temporary injunctions for the

Unofficial Copy Office of this Daniel District Clerk

safety and welfare of the children subjects of this suit as deemed necessary and equitable, including but not limited to the following:

Respondent should immediately make herself available to a mental health professional designated by the Court to evaluate Respondent's mental and emotional state, and her ability to be involved in the daily parenting of the children subjects of this suit.

Petitioner should have exclusive possession and access to the children until such time as Respondent has undergone a psychological evaluation and it is established that she is mentally capable of caring for the children. The Court should also make any other orders that are necessary to protect the children and that are found to be in the children's best interest.

Petitioner should be designated as the conservator who has the exclusive right to make decisions concerning the children's education.

Petitioner requests the Court to dispense with the necessity of a bond, and Petitioner requests that, after notice and hearing, Respondent be further restrained and enjoined, pending the further order of the Court, from:

1.      Disturbing the children or Petitioner or interfering in any way with Petitioner's possession of the children by taking or attempting to take possession of the children, directly or through any other person, from the residence, school, or any other place.

2.      Withdrawing the children from enrollment in the school or day-care facility where the children are presently enrolled.

3.      Hiding or secreting the children from Petitioner.

4.      Making disparaging remarks regarding Petitioner or Petitioner's family in the presence or within the hearing of the children.

5.      Being present at the school within one (1) hour from the date and time that **CLIFFORD LAYNE HARRISON** is to pick up the children at the beginning of **CLIFFORD LAYNE HARRISON's** periods of possession.

Respondent should be ordered to pay child support, health insurance premiums for coverage on the children, and fifty percent (50%) of the children's uninsured medical expenses.

*Prayer*

Movant prays that the Court finds that Respondent has violated the terms of the parties Mediated Settlement Agreement, and that the Court award attorney's fees, expenses, costs, and interest against Respondent, and for all further relief authorized by law.

Movant further prays that the Court grant temporary orders in accordance with this motion.

Respectfully submitted,

*Schlanger, Silver, Barg & Paine, LLP*

By: _____

      Patricia A. Wicoff
      State Bar No. 21422500
      Attorney for Petitioner
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
Telephone:   (713)  735-8514
Facsimile:    (713)  351-4514
pwicoff@ssbplaw.com (Non-service emails)
famlawservice@ssbplaw.com (Email service only)

**Notice of Hearing**

The above motion is set for hearing on ***April 10, 2014*** at ***1:30 p.m.*** in the 311th Judicial District Court of Harris County, Texas.

SIGNED on _____.


_____
Judge or Clerk

**Certificate of Conference**

I hereby certify that I attempted to resolve the controverted matters set forth in the foregoing motion without Court intervention and all such attempts have failed. Agreement could not be reached; therefore, the motion is presented to the Court for a determination.


_____
Patricia A. Wicoff
Attorney for Petitioner

Unofficial Copy Office of Chris Daniel District Clerk

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on the __4__ day of April, 2014.

Christopher W. Martin
**MARTIN, DISIERE, JEFFERSON & WISDOM, LLP**          *via electronic delivery*
808 Travis Street, 20th Floor
Houston, Texas 77002

David M. Medina
**BRENT COON & ASSOCIATES**          *via electronic delivery*
300 Fannin, Suite 200
Houston, Texas  77002

Ms. Heather Hughes
**LAW OFFICE OF HEATHER M. HUGHES**          *via electronic delivery*
952 Echo Lane Suite 410
Houston, Texas, 77024

_____
Patricia A. Wicoff
Attorney for Petitioner

REPORTER'S RECORD

VOLUME 1 OF 1

COURT CAUSE NO. 2006-68864

| IN THE MATTER OF | * | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | * | |
| | * | |
| CLIFFORD LAYNE HARRISON | * | |
| AND | * | HARRIS COUNTY, T E X A S |
| CONNIE VASQUEZ HARRISON | * | |
| | * | |
| AND IN THE INTEREST OF | * | |
| JOHN EARNEST LEE | * | |
| HARRISON, II., AND | * | |
| VICTORIA MADELINE | * | |
| HARRISON, | * | |
| MINOR CHILDREN | * | 311TH JUDICIAL DISTRICT |

*********************************************************

REPORTER'S RECORD

*********************************************************

On the 30th day of May, 2014, the following proceeding came to be heard in the above-titled and numbered cause before the Honorable Thomas Stansbury, presiding, held in Houston, Harris, Texas:

Proceedings reported by computerized stenotype machine.

(Excerpt of Pages 53 through 56.)

Angela N. McBride, Deputy Reporter, Certified Shorthand Reporter

A P P E A R A N C E S

Patricia A. Wicoff                    Christopher W. Martin
SBOT:  21422500                       SBOT:  13057620
Amy R. Harris                         808 Travis St., 20th Floor
SBOT:  24041057                       Houston, Texas  77002
109 N Post Oak Ln, Ste 300            Telephone: 713.632.1700
Houston, Texas  77024                 Attorney for Respondent
Telephone: 713.785.1700               Connie Vasquez Harrison
Attorneys for Petitioner
Clifford Layne Harrison


Heather M. Hughes
SBOT:  00796794
952 Echo Lane, Suite 475
Houston, Texas  77024
Telephone: 713.463.5505
Amicus Attorney

VOLUME 1 OF 1

CHRONOLOGICAL INDEX

May 30, 2014                                    Page       Vol.

Appearances...................................2          1

Chronological Index...........................3          1

Proceedings...................................4          1

Court Reporter's Certification...............72          1

MS. WICOFF: Objection, Your Honor. What is the relevance for this other than trying to persuade the Court that this is a bad person?

MR. MARTIN: It's directly relevant under the code with respect to possession issues concerning the children. The code makes it specifically relevant with respect to the transfer of presumptions or whether there is a repetitive course of conduct, which the law indicates that one criminal conviction is directly relevant to these exact kind of issues.

THE COURT: Okay. And you're saying or are you about to assert that whatever action, activity, court orders, convictions that occurred in 2007 or earlier were directly related to Ms. Harrison's abilities to adequately mediate these issues in January of this year?

MR. MARTIN: No, sir.

THE COURT: So for what reason is it relevant to this proceeding?

MR. MARTIN: To the extent the Court believes that the MSA is not binding, which is our primary argument that we think the MSA resolves all of this and we don't even need to be here, but it's an alternative argument in the event the Court disagrees with that and we just consider the merits, the family

code indicates that it's a factor in Ms. Harrison's favor.

MS. WICOFF: I renew my objection, Your Honor.

THE COURT: As a factor how, please? I just don't follow, Mr. Martin.

MR. MARTIN: Well if -- hypothetically if there were no Mediated Settlement Agreement, Family Code Section 153.004 indicates that the Court has to consider the commission of family violence in resolving issues like this. Since we wanted the record to be clear for the Court that to the extent that the Court is complying with 153, that that evidence was in the record.

MS. WICOFF: May I respond, Judge?

THE COURT: Yes, ma'am.

MS. WICOFF: You know, they're damned if they do; they're damned if they don't. In one breath they say they want to enforce the MSA, in the other breath they say they don't. If they don't think she has the mental capacity, which they have made a judicial admission that she does not have in order to make the best decisions for these children -- a judicial admission, it's in their pleadings. They filed it with this court, she does not have the mental capacity to make decisions in the best interest of these children.

We can either accept that judicial admission as a stipulation, or we can rely on what was filed recently that says -- and the representation before the Court that everybody recognizes this MSA is signed, sealed, delivered before the Court, signed off on and everybody should follow it. I don't know on any given minute what their position is going to be with regard to this MSA. One minute we have one, the next minute we don't.

So Judge, I renew my objection. Either you've got to find based on her judicial admission she doesn't have the capacity to do the right thing for these children or on any other thing that you may have heard during the testimony of this case, particularly from Ms. Gallagher. But anyway, that's my objection.

MR. MARTIN: Well, despite the unprofessionalism of the last diatribe, which I object to, I don't know what you're talking about in terms of stipulation. But for the record our position is the MSA is binding and fully enforceable. Mr. Newman filed a motion to set it aside. It's never been set for hearing, it's never been ruled on by the Court. We're asking this Court to rule on that previously-filed motion by prior counsel. We are asking this Court to enforce the MSA as written as I argued during my opening summary.

MS. WICOFF: Then I would renew my objection.

MR. MARTIN: And I simply was pointing out an alternative to the extent the Court disagrees with that. I just simply wanted to establish the record.

THE COURT: Overruled, and I will accept the testimony as given with regard to prior acts or criminal factors.

Q. (BY MR. MARTIN) And just so the record is clear, there is a criminal conviction for family violence --

A. No.

Q. -- against you and Ms. Harrison?

A. No, sir, there is not.

Q. You pled guilty, didn't you, sir?

A. No, I did not.

Q. How was it resolved?

A. There was a dismissal. Deferred adjudication and a dismissal.

Q. Okay. And you got deferred adjudication on the assault and battery charge; correct?

A. Whatever the charge was, it was dismissed, yes, sir.

Q. Okay. Well, it's your position with respect to the proposed order before the Court that you be allowed to e-mail the Court as much as you want -- I'm sorry --

STATE OF TEXAS

COUNTY OF HARRIS

I, Angela N. McBride, Deputy Court Reporter in and for the 311th District Court of Harris, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

I further certify that the total cost for the preparation of the Reporter's Record is $100.00 and was paid by Ms. Connie Vasquez Harrison.

WITNESS MY OFFICIAL HAND this the 26th day of March, 2015.

```
                        ___/s/ Angela N. McBride_____
                        Angela N. McBride, CSR
                        Texas CSR 7026
                        Deputy Court Reporter
                        7818 West Road
                        Houston, Texas  77064
                        Telephone:  (713) 849-5084
                        Expiration:  12/31/15
```

Angela N. McBride, Deputy Reporter, Certified Shorthand Reporter

REPORTER'S RECORD

VOLUME 1 OF 2

COURT CAUSE NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | * | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | * | |
| | * | |
| CLIFFORD LAYNE HARRISON | * | |
| AND | * | HARRIS COUNTY, T E X A S |
| CONNIE VASQUEZ HARRISON | * | |
| | * | |
| AND IN THE INTEREST OF | * | |
| JOHN EARNEST LEE | * | |
| HARRISON, II., AND | * | |
| VICTORIA MADELINE | * | |
| HARRISON, | * | |
| MINOR CHILDREN | * | 311TH JUDICIAL DISTRICT |

*********************************************************

REPORTER'S RECORD

*********************************************************


On the 3rd day of September, 2014, the following proceeding came to be heard in the above-titled and numbered cause before the Honorable Robert Newey, presiding, held in Houston, Harris, Texas:

Proceedings reported by computerized stenotype machine.

Angela N. McBride, Deputy Reporter, Certified Shorthand Reporter

A P P E A R A N C E S

Patricia A. Wicoff                    Christopher W. Martin
SBOT:  21422500                       SBOT:  13057620
Amy R. Harris                         808 Travis St., 20th Floor
SBOT:  24041057                       Houston, Texas  77002
109 N Post Oak Ln, Ste 300            Telephone: 713.632.1700
Houston, Texas  77024                 Attorney for Respondent
Telephone: 713.785.1700               Connie Vasquez Harrison
Attorneys for Petitioner
Clifford Layne Harrison


Heather M. Hughes
SBOT:  00796794
952 Echo Lane, Suite 475
Houston, Texas  77024
Telephone: 713.463.5505
Amicus Attorney

VOLUME 1 OF 2

CHRONOLOGICAL INDEX

September 3, 2014                              Page      Vol.

Appearances....................................2        1

Chronological Index/Examination Index.........3        1

Exhibit Index.................................4        1

Proceedings...................................5        1

Court Reporter's Certification...............37        1

EXAMINATION INDEX

                        DIRECT    CROSS    REDIRECT    RECROSS

CLIFFORD L. HARRISON

     By Ms. Wicoff      8

EXHIBIT INDEX

OFFERED BY THE PETITIONER

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| 34 | Handwritten Letter | 21 | 21 | 1 |
| 50 | Motion to Set Aside Purported Mediated Settlement Agreement On Parent Child Issues | 23 | 23 | 1 |

P R O C E E D I N G S

THE COURT: The Court calls Cause No. 2006-68864, Clifford Harrison, Connie Harrison.

Counsel, identify yourselves for the record, please.

MS. WICOFF: Your Honor, I'm Patricia A. Wicoff together with Amy Harris representing Movant in the habeas corpus, the Movant in the enforcement action, and the Movant for mental examination, Mr. Clifford Layne Harrison.

MS. HUGHES: Your Honor, I'm Heather Hughes, amicus attorney for the two children John and Victoria.

MR. MARTIN: And I'm Christopher Martin, previous counsel for Connie Harrison. As of this morning we've filed a motion to withdraw myself and my law firm as counsel of record for Ms. Harrison and a motion to continue this hearing based upon our withdrawal.

THE COURT: I'm curious about something. Yesterday the Court signed an order to appear on 9-25-14 at 9:00 a.m. What is that?

MS. HARRIS: That's an additional contempt, Judge.

THE COURT: Okay. So that's another enforcement.

MS. HARRIS: It's an additional enforcement, Judge.

MS. WICOFF: It's another enforcement, Judge.

MR. MARTIN: I haven't seen it.

THE COURT: So you want to deal with your motion to withdraw first?

MR. MARTIN: Yes, sir.

THE COURT: Okay. So how do you as -- I understand it you filed it last night?

MR. MARTIN: Early this morning.

THE COURT: Early this morning.

MR. MARTIN: Yes, sir.

THE COURT: You had a telephone conversation with your client last night?

MR. MARTIN: At 11:00 p.m., yes, sir.

THE COURT: And you advised her that you were filing a motion to withdraw?

MR. MARTIN: Yes.

THE COURT: So if I grant it now, is that -- has she had enough notice? I mean, she might not like the language that's included in the motion. I don't know.

MR. MARTIN: Without waiving my attorney-client privilege, Your Honor, I can say that I

do not have any consent from Ms. Harrison to be here to represent her, to speak on her behalf.

THE COURT: Today.

MR. MARTIN: Today.

THE COURT: Regardless of whether you withdraw or not.

MR. MARTIN: Correct. In fact there have been discussions about walking out of court and not appearing, and I have my client's consent to do that.

THE COURT: All right. What I'm going to do is allow you to do whatever you need to do, but I'm going to reset your motion to withdraw until Friday to give you an opportunity to give her appropriate notice.

MR. MARTIN: Of course.

THE COURT: You can then choose to stay or leave. That's up to you.

MR. MARTIN: Today you mean or as of Friday?

THE COURT: Right now.

MR. MARTIN: I won't stay just too long, but I'm not here to represent her.

THE COURT: All right. So you're not going to ask any questions, take any position -- take any position?

MR. MARTIN: No. I'm not here to represent her.

THE COURT: Any objection to that?

MS. WICOFF: No objection.

MS. HUGHES: No, Your Honor.

THE COURT: That leaves us now with the emergency motion to change custody.

MS. WICOFF: Correct. And I have Mr. Harrison here.

THE COURT: Let's hear some evidence on that.

MS. WICOFF: Mr. Harrison, can you come up?

THE COURT: Raise your right hand, please.

(Oath administered.)

THE COURT: All right. Proceed.

MS. WICOFF: Your Honor.

DIRECT EXAMINATION

BY MS. WICOFF:

Q. State your name.

A. Clifford Layne Harrison.

Q. You are the father of John Harrison and Victoria Harrison?

A. I am.

Q. You are a joint managing conservator pursuant to temporary orders; is that correct?

A. That's correct.

Q. Sir, you have filed a motion asking this Court to

immediately designate you as the sole -- temporary sole managing conservator of these two minor children or as the joint managing conservator who establishes the residence of these children; is that correct?

A. Yes.

Q. Sir, can you tell me briefly what has occurred since January of 2014 which you believe has been injurious to the welfare, emotional or physical welfare of your children at the direct supervision and instruction of Connie Harrison?

A. It is probably not possible to tell you briefly.

Q. Well, tell the Court why you are asking for an immediate change of custody.

A. There have been many, many occasions where she has unilaterally decided to withhold the children, not turn them over. She has violated court orders, she has violated Mediated Settlement Agreements, she has then violated the order that implemented the Mediated Settlement Agreement. She has gotten the kids kicked out of school by causing disruptions at the school in violation of the Mediated Settlement Agreement.

Q. Let me stop you a minute with regard to the school issue. Your children were life-long attendees at Second Baptist School; is that correct?

A. That's correct.

Q. And when you say she unilaterally got them kicked out, the children were prohibited from returning to Second Baptist; correct?

A. Right.

Q. And we were -- had a temporary hearing before the Honorable Tom Stansbury in June of 2014 of this year; is that correct?

A. That's right.

Q. And at that time, the principal from Second Baptist came and testified; correct?

A. Correct.

Q. And in that testimony which we have reduced to a court reporter's transcript, did the Second Baptist principal state that but for the actions of Connie Harrison that the children would still be back at Second Baptist?

A. Yes.

Q. All right. Did Judge Stansbury make a ruling that you were to have the right to enroll the children either in Briar Grove or -- Victoria in Briar Grove Elementary School and enroll John in Grady Middle School?

A. First of all, it was a ruling that gave me the exclusive right to try and enroll them in First Baptist Academy which was --

THE COURT: Was an official order entered?

MS. HARRIS: Yes.

MS. WICOFF: Yes. I have that order, Judge, if you would like a copy of it.

THE COURT: Let me see if I can find it. Give me the date of the order.

MS. WICOFF: While she's pulling that, you want me to wait?

THE COURT: That occurred in May?

MS. WICOFF: I believe in June, Judge.

MS. HARRIS: The hearing was May 27th.

MS. WICOFF: Oh, was it? I'm sorry. Here is a copy of it, Your Honor.

THE COURT: I think I have it, but then Judge Stansbury signed an order on May 30th.

MS. HARRIS: That's it, Judge.

MS. WICOFF: Here is a hard copy, Judge.

THE COURT: I think that's it.

MS. WICOFF: Actually there may be two there.

THE COURT: It is. I have it. I found it on the screen.

MS. WICOFF: May I proceed?

THE COURT: You may.

Q. (BY MS. WICOFF) Mr. Harrison, so you were

initially authorized to try and get the children into First Baptist Academy; is that correct?

A. That's correct.

Q. The children were not admitted to First Baptist Academy after they spoke with Second Baptist; is that accurate?

A. That is correct.

Q. And the order further provided that the children were to go to the public school if they were not admitted to First Baptist Academy, that they were to go to the public school to which you, your residence, is zoned; is that correct?

A. That is correct.

Q. That is Briar Grove?

A. Briar Grove Elementary.

Q. And that is Grady Middle School; is that correct?

A. And Grady, yes.

Q. And additionally you have since found out that Connie Harrison has violated that order; is that correct?

A. That's correct.

Q. Your son is not enrolled in Grady Middle School, is he?

A. I found that out on Thursday when I went to pick him up that he was not even enrolled.

THE COURT: Okay. Hold on a minute. As I'm reading this order on May 30th, you were given permission to enroll the children at First Baptist Academy.

THE WITNESS: Yes, sir.

THE COURT: And she was not to interfere with that in any way.

THE WITNESS: That's correct.

THE COURT: I wasn't listening carefully enough to what you just told me. What happened then?

THE WITNESS: Well, I went to First Baptist. It was a process. I submitted everything, and they interviewed us, they interviewed the kids, took the kids up there, took a tour, met with the principals of both the lower school and the middle school, submitted the test scores, the transcripts, letters of recommendation from Second Baptist. Did everything that we needed to do. Unfortunately --

THE COURT: At First Baptist or Second Baptist?

THE WITNESS: They were at Second, and so Second Baptist teachers had to write letters of recommendation to First Baptist where I was trying to get them -- where I was trying to get them admitted. And then some time in June they sent me an e-mail saying

they would not be offering a contract of attendance.

THE COURT: Did they offer any explanation?

THE WITNESS: No.

THE COURT: They just said no?

THE WITNESS: They just said no.

THE COURT: So we don't know what role, if any, Ms. Harrison played in that decision?

THE WITNESS: Judge, all I can tell you is the very first question they ask is the very first question any private school would ask, and that is have these kids ever been basically kicked out of any of -- or denied admittance to any other schools, and I had to tell them yes.

THE COURT: So you think First Baptist denied the request to enroll because they were out of Second Baptist?

THE WITNESS: I don't think there's any other reason for it. Yes, sir. I think that's the only conclusion to be drawn.

THE COURT: All right. Continue.

MS. WICOFF: Thank you.

Q. (BY MS. WICOFF) So pursuant to the order signed by Judge Stansbury on May 30th, when your children were not able to go to First Baptist Academy, did you enroll both children, or did you enroll Victoria in Briar Grove

and did you enroll John at Grady?

A. Yes.

THE COURT: All right. Now, under what authority were you doing that?

THE WITNESS: This order that says if they don't go to First Baptist then -- as I think it's down toward the bottom, then they would be --

THE COURT: All right. You got that they could go to a school where you were zoned?

THE WITNESS: Yes, sir.

THE COURT: All right. That's the last paragraph of the May 30th order signed by Judge Stansbury.

MS. WICOFF: Correct.

THE WITNESS: Yes, sir.

THE COURT: All right.

A. I couldn't --

Q. (BY MS. WICOFF) Did you find out -- so you did what you were supposed to do pursuant to the temporary order; is that correct?

A. Yes.

Q. And sir, have you since learned that Connie Harrison has not taken the children -- has not taken John to Grady Middle School?

A. Yes.

Q.   Okay.  When did you find out that he was not enrolled at the school that he was ordered to be enrolled in pursuant to Judge Stansbury's order?

A.   Well, if I can back up just a second.  I enrolled him in early August.  I went up there, I filled out all the forms, gave them the utility bills, my driver's license showing my residence.  I enrolled him.  I got the packet -- the summer packet of assignments he had to do in several different subjects.  I bought his school supplies, got some uniforms for him.  He was --

Q.   Ready.

A.   He was enrolled.  And I e-mailed Connie, told her I had this stuff, told her she needed to pick up this packet of summer assignments that he needed to do, that he had some required reading he had to do.  Never heard a word.  It was not until last -- the last Tuesday we were here, and my understanding was that the Court ordered her to allow me to pick up the kids from school on Thursday, last Thursday because it was my weekend.  Great.  The first time I'd seen them in six weeks.  So first I go to -- it's a long answer and I apologize.

Q.   All right.  Shorten it.

A.   I go to Briar Grove to pick up Victoria and they said she was absent.  I left Briar Grove and I went to Grady Middle School, and I drove through the carpool.  I

had been to orientation a few weeks earlier, and they told me I had to --

Q.   Was John there?

A.   I got up there, he was not there.

Q.   Did you find out he wasn't even attending Grady as ordered by the Court?

A.   My first thought was that whether --

THE COURT:  Is that a yes or a no?

THE WITNESS:  It's a yes.

THE COURT:  Stay with us.  I know this is a troubling time for you, but if you'll just answer Ms. Wicoff's questions, we will get through this a lot quicker.

Q.   (BY MS. WICOFF)  Mr. Harrison, up until the amicus attorney informed you, did you even know where your son was in middle school?

A.   No.  I found out through her that he was not enrolled at Grady and that she didn't know where he was.

Q.   And did you also find out that you -- even though the Court ordered Ms. Harrison for you to have your visitation commencing this last Thursday, Ms. Harrison pulled Victoria out of school that day so you could not see her?

A.   I found that Victoria was absent Thursday and Friday, yes.

Q. So she's missed two days out of the first week of school; is that correct?

A. That's correct.

Q. Do we know whether she's in school today?

A. I have no idea.

Q. Sir, you have filed three contempts against Connie Harrison in three years; is that correct?

A. Yes.

Q. We have a fourth contempt that has been filed with a process server here today to serve her; is that correct?

A. Yes.

Q. Can you tell the Court approximately how many times, how many days you have missed of visitation just this summer -- well, just since the first of the year?

A. January 27th --

Q. How many days?

A. 21.

Q. Sir, and am I correct -- now, there was some kind of physical altercation in June; is that correct?

A. July.

Q. July? All right.

THE COURT: Of this year?

THE WITNESS: Yes, sir.

Q. (BY MS. WICOFF) And had you gone to get your

children?

A. Yes.

Q. Did Connie Harrison get out of her car and attack the lady that you were with?

A. She did.

Q. Did she take your cell phone from you?

A. Yes.

Q. Were the police called?

A. Yes.

Q. The police did not want charges filed; is that correct?

A. That's correct.

Q. Ms. Harrison has pursued relentlessly the DA's office to get this matter moving forward; is that correct?

A. That is correct.

Q. And you're aware of that?

A. I am.

Q. And you're aware of the activities that she has engaged in; is that correct?

THE COURT: Yes or no?

A. I think I've just seen the tip of the iceberg of what she's been engaged in.

Q. (BY MS. WICOFF) Mr. Harrison, do you believe -- you got a letter from your son John -- you got a letter

from your son John; is that correct?

A. It looks likes it was in his handwriting. It was a -- it was e-mailed to me from an Office Depot.

Q. All right, sir. Is the letter --

THE COURT: It was an attachment to an e-mail?

THE WITNESS: It was an attachment to an e-mail that I received from an Office Depot.

Q. (BY MS. WICOFF) Sir, the letter -- and we're getting the letter. The letter that you received, did it sound like something that your son would have composed?

A. No.

Q. Do you believe that Connie Harrison has engaged in consistently ever since you filed for divorce back in 2006 a conscientious effort to alienate you from your children and your children from you?

A. I do.

Q. Let me hand you Petitioner's Exhibit No. 34. Is this a copy of the letter that allegedly John Harrison sent to you?

A. Yes. It looks like it's his handwriting except the date is in Connie's handwriting.

Q. All right. So it's partly in Connie's handwriting and partly in your son's?

A. It appears to be, yes.

MS. WICOFF: Your Honor, I would tender Exhibit 34.

MS. HUGHES: No objection, Your Honor.

THE COURT: All right. 34 will be admitted.

Q. (BY MS. WICOFF) Is this the kind of emotional abuse that you think both of these children are undergoing under the hands of Connie Harrison?

A. Yes.

Q. Do you think this is damaging to your children?

A. Yes.

Q. Are you concerned about their ongoing emotional wellbeing?

A. Absolutely.

Q. Do you believe that Connie Harrison is mentally deranged at this point?

A. Yes.

Q. Do you think her judgment is impaired with regards to these children?

A. Absolutely.

Q. In fact she even acknowledged in her own motion to set aside an MSA that she could not make decisions with regard to the best interest of these children, did she not?

A. She did.

Q.   And that's in a pleading in the court; correct?

A.   Yes.

Q.   Okay.   That is in her motion to set aside Mediated Settlement Agreement; is that accurate?

A.   Yes.

THE COURT:   When was that filed?

MS. WICOFF:   Your Honor, I have a copy for you.

THE COURT:   Just tell me when it was filed.

MS. WICOFF:   Well, I don't know that mine is file marked.

MS. HARRIS:   Probably March or --

THE COURT:   What's the certificate of service?

MS. HARRIS:   March 13th, Judge.

MS. WICOFF:   I can submit a hard copy, Judge.

MS. HARRIS:   It was filed by Mr. Newman, Judge.

MS. WICOFF:   Mr. Bobby Newman filed it when he was representing her.

Q.   (BY MS. WICOFF)   Sir, I'm going to hand you what's been marked Petitioner's Exhibit No. 50.   Is this the motion that Ms. Harrison filed by and through her attorney Bobby Newman?

A.   Yes.

MS. WICOFF:  Judge, here is a hard copy if you would like to see it.

THE COURT:  That would be helpful.  Thank you.

MS. WICOFF:  And I would direct your attention, Judge, to Page 2, Paragraph No. 3 where Connie Harrison states a judicial admission, Connie Harrison has been a victim of family violence and that circumstances surrounding the family violence -- now this is something that she would have been referring to that occurred in 2006, eight years ago -- impaired her ability to make decisions, and the Mediated Settlement Agreement is not in the best interest of the children.

THE COURT:  The court notes that is in the pleadings, Exhibit C as it's marked.  And also Petitioner's Exhibit 50 doesn't appear to have a file stamp on it, but I'm going to accept Counsel's representation that this was timely filed --

MS. WICOFF:  It was --

THE COURT:  -- by Mr. Newman on behalf of Ms. Harrison.  All right.

Q.   (BY MS. WICOFF)  Sir, in addition to not having been able to see your children -- how many days did you say it was?

THE COURT:  21.

Q.  (BY MS. WICOFF)  21 days since the --

THE COURT:  21.

A.  Well, it's a total of 21 days.  I haven't seen John in several weeks.

Q.  (BY MS. WICOFF)  All right.  Have you been able to communicate with them by phone?

A.  No.

Q.  Have you tried to communicate with them by phone?

A.  Yes.

Q.  Have you tried to communicate with them by text?

A.  Yes.

Q.  Have you been successful?

A.  John has not responded.  I have received responses from Victoria's phone that clearly came from Connie.

Q.  Okay.  And when you say they clearly came from Connie, how do you know they clearly came from Connie?

A.  There are things that are misspelled that Victoria would never misspell.  It's clearly that Victoria did not write the responses.

Q.  All right, sir.  We have had multiple -- we've had multiple efforts to try and serve her with various pleadings; is that correct?

A.  Yes.

Q. She avoids service?

A. She does.

Q. All right. Constables have been to her home and she refuses to come to the door?

A. Yes.

Q. Even though her car is in the driveway?

A. Yes.

Q. All right. Sir, tell the Court what other reasons you believe your children are at risk under any continuing ongoing care by Connie Harrison.

A. Her behavior has deteriorated such over the last few months that I don't really know what she's capable of doing anymore. She is --

THE COURT: Is she employed?

MS. WICOFF: No.

THE WITNESS: That's a good question too. You can't get a straight answer on any of these questions from her.

MS. WICOFF: She's a licensed attorney.

THE WITNESS: I think she is still licensed.

THE COURT: Is she still active?

MS. HARRIS: She is active.

MS. WICOFF: Her license is still --

THE COURT: She's kept her license alive?

MS. HUGHES: Last time I checked, Your

Honor.

THE COURT: All right.

A. She is very controlling, she is very manipulative, she has sole and total control over the children and has prevented all access and --

THE COURT: I got that.

A. But my concern is that the reason is she is attempting to alienate them from me, God knows what she's telling them. I do know as an example that her -- that my niece Victoria's cousin tried to text Victoria because she missed her and was worried about her, and Connie took Victoria's phone and texted my 14-year-old niece with pictures of these injuries and saying, look what Daddy did to me, that kind of stuff we're dealing with.

She's extremely dishonest, she's never told the truth about I don't think anything in her life, she doesn't listen to anybody, she continues to violate order after order after order, she ignores direct orders of this Court even when she's standing here being ordered to do something. She has refused to allow them to attend the schools to which they are zoned, taking them to different schools and then prohibits all access to the kids. They are at these different schools. I don't know if she's going to run off to Fort Stockton

with them, I don't know what she's going to do, I don't know what she's capable of.

THE COURT: What is in Fort Stockton?

THE WITNESS: Her family. That's where she's from, about eight hours away, and they often go out there. And she has testified under oath that she --

THE COURT: Hold on a minute. Ms. Hughes, do you have any questions?

MS. HUGHES: No, Your Honor.

THE COURT: Anything further?

MS. WICOFF: Nothing further, Judge. Unless there is more examples.

THE COURT: The Court is going to grant the emergency motion to change custody instanter. I will need an order. I will grant a capias for her arrest for not appearing as she was sworn to reappear on this date. What else?

MS. HUGHES: I have a request, Your Honor.

THE COURT: All right.

MS. HUGHES: That Mr. Harrison's girlfriend just in the interim not be around the children. It's been some time since they have seen their father. I think it's --

THE COURT: Are you living with this woman?

THE WITNESS: No.

THE COURT: Any objection to that request?

MS. WICOFF: No.

THE WITNESS: It just depends on how long it is.

THE COURT: That will be an injunction. Add it as an injunction.

MS. HARRIS: For how long, Judge?

THE COURT: I'm sorry?

MS. HARRIS: For how long?

THE COURT: Until further order of the Court.

MS. WICOFF: Heather, do you have a recommendation?

MS. HUGHES: I don't. I want to -- I mean, I've only visited with Victoria yesterday at the school, but I just -- I don't want to add more moving pieces.

MS. WICOFF: Can we sort of give the ad litem the opportunity to meet with the kids and then maybe make a recommendation as to whether we need to continue this?

THE COURT: Once the children are transferred to Mr. Harrison then -- and he doesn't appear to be hostile to the ad litem. I assume he will work out a time or times for Ms. Hughes to visit with the children. It's certainly needed.

MS. HARRIS: We have.

THE COURT: I do think that we need the parties psychologically evaluated.

MS. WICOFF: I agree.

THE COURT: And I will grant that relief, but it will be mutual and it will include the children. There's no telling how much damage has been done for whatever the reasons are. So include that.

MS. WICOFF: Judge, we had tried to see if Dr. Silverman was available. As you can anticipate, he can't even see them. We have a January trial setting. He can't even see them until December.

THE COURT: Ms. Hughes, who do you think ought to do the mental evaluation?

MS. HUGHES: Your Honor, there is a lady in Dr. Silverman's office named Dr. Tinder. I've got her on a case right now. She seems to be responsive. I know that she's relatively new.

THE COURT: Has anybody used the psychologist or -- Joan Anderson?

MS. HUGHES: The group of three that she's working with?

THE COURT: We referred -- you know, that was several months ago. I wondered if anybody had any experience with her.

MS. WICOFF:  No.

MS. HARRIS:  We haven't yet.

MS. WICOFF:  I'll tell you, and Counsel just reminded me.  There are two people, really.  One that I know because I checked with his office to find out if he could get it done was Dr. Harrison -- was Kit Harrison.  The other one is a gentleman named Peter Simone who is in the general vicinity of where the parties live.  I don't know if you know Dr. Simone.

THE COURT:  I don't.  We're always looking for new qualified forensic evaluators.

MS. HUGHES:  May I look into that --

MS. WICOFF:  We're going to.

MS. HUGHES:  -- before we commit?

THE COURT:  How quickly can we get an order?

MS. HUGHES:  Friday.  We can work on that tomorrow.

THE COURT:  I'm going to give you --

MS. WICOFF:  With regard to the mental health?

THE COURT:  All of these orders.

MS. WICOFF:  We can get it all by Friday.

THE COURT:  All right.  I'll give you an entry date for Friday.

MS. HUGHES:  Your Honor, I also have a

request.

THE COURT: All right.

MS. HUGHES: I don't anticipate it being a problem, but if the order can also include a provision that I am allowed to visit with the children at the school and maybe with some directive to the school administration.

THE COURT: Any objection to that?

MS. WICOFF: No. She needs it because she was denied access previously.

THE COURT: Include authorization language. Now, you had suggested or referenced to the district attorney's office. Does that have to come from the Court?

MS. WICOFF: Judge, it really should come from you because otherwise it's going to look like a knee-jerk reaction by Mr. Harrison. It needs to come from the Court. The Court needs --

MS. HARRIS: We have investigated that.

THE COURT: The question I have is, how much effect will it have coming from an associate judge as opposed to a district judge.

MS. WICOFF: I think it will be fine, Judge.

THE COURT: All right.

MS. WICOFF: And you may want to talk to

Judge Franklin about it, but clearly she has violated that penal code.

THE COURT: Factually, you know, I'm assuming because I think I have to that the testimony is all true. And if it is, and I have heard disregard for various court orders, she is obviously in the Court's opinion interfering with Mr. Harrison's rights to these children.

The only question I have is what does it take to get the district attorney essentially involved.

MS. WICOFF: I don't know, Judge, but I would encourage you to if you believe that, that I would ask that you pursue that, discuss it with Judge Franklin and that it be --

THE COURT: I will work behind the scenes with Judge Franklin.

MS. WICOFF: And that it be done quickly.

THE COURT: All right.

MS. WICOFF: Because quite frankly I'm concerned that she might have fled with the children at this point.

THE COURT: I don't know where she is. She's certainly not here, and she was ordered to be here.

MS. WICOFF: Well, the reason I have that

concern, Judge, is because apparently the constable has gone to the schools this morning to get the children and we --

THE COURT: Okay, Ms. Wicoff. I've got the same concern. That's one of the factors that I've taken into consideration in granting the emergency transfer of custody and also invited the references and approved the writ of habeas corpus and the writs of attachment and granted a capias.

MS. HARRIS: Judge, on the referral, if you'll recall last week, Ms. Harrison told you that the DA's office had amended the protective order to include the children, they were just waiting on the imaging of that order. That was not true. However, she continues to badger and stalk these prosecutors.

THE COURT: Okay. I will see you with an order on Friday.

MS. WICOFF: Judge, I do have one request.

THE COURT: I'm handing the exhibits to the court reporter.

MS. WICOFF: Mr. Harrison is -- I mean, the kids are -- if he gets the children --

MS. HARRIS: They are on the way.

MS. WICOFF: They are on the way? We are going to need --

THE COURT: Wait a minute. They are on their way where?

MS. WICOFF: To the courthouse.

MS. HARRIS: Here. The constable picked them up at school this morning, Judge.

MS. WICOFF: That's good news. Judge, we are going to need access somehow --

MS. HARRIS: At least John. They were getting Victoria but --

MS. WICOFF: We are going to need the children's uniforms and school --

MS. HUGHES: They don't have uniforms for the middle school. Victoria's is khakis and a collared shirt similar to what it was last year.

MS. WICOFF: We've probably got school things here.

MS. HUGHES: I think that's the least of these parties' worries.

THE COURT: That's the least of the Court's worries. My suggestion is that Mr. Harrison go and get what the children need, not from Ms. Harrison but just generally.

THE WITNESS: Clothes -- if I may speak. I'm not worried about clothes, but I'm concerned about books, things of that nature that may be irreplaceable.

THE COURT: Well, you may have to replace -- you may have to just replace everything.

MS. WICOFF: We just may have to. And Judge, I assume there will be --

THE COURT: I'm going to recess this hearing until the constable gets here with the children.

MS. WICOFF: All right. We'll just wait, Judge.

THE COURT: All right.

MS. WICOFF: We'll just wait.

MR. MARTIN: What time would you like me back on Friday?

THE COURT: Well, do you want to be here when the children arrive -- or the child arrives?

MR. MARTIN: I can't give --

THE COURT: Because it's possible that your client may be right behind them.

MR. MARTIN: That would be correct.

THE COURT: So the entry hearing will be at 9 o'clock on Friday morning. That's when we will have your motion to withdraw.

MR. MARTIN: Thank you, Your Honor.

THE COURT: We will be in a very brief recess.

(Short recess.)

MS. WICOFF:  We came up about possession by Ms. Harrison.

THE COURT:  None.

MS. HUGHES:  Unless there's a private supervisor?

THE COURT:  None.

(End of proceedings.)

STATE OF TEXAS

COUNTY OF HARRIS

        I, Angela N. McBride, Deputy Court Reporter in and for the 311th District Court of Harris, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

        I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

        I further certify that the total cost for the preparation of the Reporter's Record is $263.50 and was paid by Ms. Connie Vasquez Harrison.

        WITNESS MY OFFICIAL HAND this the 2nd day of October, 2014.

                        ___Angela N. McBride /s/_____
                        Angela N. McBride, CSR
                        Texas CSR 7026
                        Deputy Court Reporter
                        7818 West Road
                        Houston, Texas  77064
                        Telephone:  (713) 849-5084
                        Expiration:  12/31/15

CAUSE NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | § | |
| | § | |
| CLIFFORD LAYNE HARRISON | § | |
| AND | § | |
| CONNIE VASQUEZ HARRISON | § | HARRIS COUNTY, T E X A S |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOHN ERNEST LEE HARRISON, II AND | § | |
| VICTORIA MADELINE HARRISON | § | |
| CHILDREN | § | 311TH JUDICIAL DISTRICT |

**FILED**
Chris Daniel
District Clerk
SEP - 3 2014
Time: 12:07 pm
Harris County, Texas
By: _____ Deputy

## ORDER GRANTING PETITIONER'S MOTION FOR
## TEMPORARY ORDERS ON PARENT-CHILD ISSUES

On September 3, 2014, the Court heard Petitioner's Motion for Temporary Orders on Parent-Child Issues.

### Appearances

Petitioner, **CLIFFORD LAYNE HARRISON**, did appear in person and through his attorneys of record, Patricia A. Wicoff and Amy R. Harris and announced ready.

Respondent, **CONNIE VASQUEZ HARRISON**, did not appear in person although duly served with notice and had previously been sworn in by this Court to reappear on this date. Respondent's attorney of record, Christopher W. Martin, did appear.

The Amicus Attorney, Heather Hughes, did appear in person and announced ready.

### Jurisdiction

The Court, after examining the record and the agreement of the parties and hearing the evidence and argument of counsel, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties.

### Children

The following orders are for the safety and welfare and in the best interest of the following children:

---

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

| Name: | *JOHN ERNEST LEE HARRISON, II* |
|---|---|
| Sex: | Male |
| Birth date: | September 2, 2000 |
| Home state: | Texas |

| Name: | *VICTORIA MADELINE HARRISON* |
|---|---|
| Sex: | Female |
| Birth date: | July 27, 2004 |
| Home state: | Texas |

*Conservatorship*

IT IS ORDERED that **CONNIE VASQUEZ HARRISON** is immediately, instanter removed as a joint managing conservator of *JOHN ERNEST LEE HARRISON, II* and *VICTORIA MADELINE HARRISON.*

IT IS FURTHER ORDERED that **CLIFFORD LAYNE HARRISON** is immediately, instanter appointed the temporary sole managing conservator of *JOHN ERNEST LEE HARRISON, II* and *VICTORIA MADELINE HARRISON,* pursuant to Texas Family Code Sec. 153.132, and as further provided for in the attached Exhibit A.

IT IS ORDERED that **CLIFFORD LAYNE HARRISON** is to be listed on any and all school records for the children and **CLIFFORD LAYNE HARRISON** shall be the sole contact person for the children until further order of this Court.

*Possession and Access*

IT IS ORDERED that **CLIFFORD LAYNE HARRISON** has the exclusive right to all periods of possession and access with the children.

IT IS FURTHER ORDERED that **CONNIE VASQUEZ HARRISON** shall not have any periods of possession and/or access to the children until further order of the Court or by written agreement of the parties and attorneys.

*Child Support*

IT IS ORDERED that **CLIFFORD LAYNE HARRISON**'s obligation to pay child support to CONNIE VASQUEZ HARRISON for the benefit of the children is immediately terminated, effective on this the 3rd day of September, 2014.

*Temporary Injunction*

**IT IS ORDERED** that **CLIFFORD LAYNE HARRISON** is enjoined from:

1.  Allowing the children to remain within the presence of Heather Fitzsimmons, subject to the further recommendation of the AMICUS attorney or by further order of the Court.

*Additional AMICUS Provisions*

**IT IS ORDERED** that Heather M. Hughes, the Court appointed AMICUS attorney for the minor children shall have unlimited access to the children, *including but not limited to* meeting with the children at their respective schools, reviewing or obtaining the children's school records, the children's medical records, communicating with the children's teachers, therapists, counselors, doctors.

**IT IS FURTHER ORDERED** that the consent of either parent is NOT required to give any school where the children are enrolled in permission to speak with the AMICUS and the children, at school or to review or obtain the children's records.

*Date of Order*

SIGNED on _____ September 3rd _____, 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

*Schlanger, Silver, Barg & Paine, LLP*

By: _____
    Patricia A. Wicoff
    State Bar No. 21422500
    Amy R. Harris
    State Bar No. 24041057
    Attorneys for Petitioner
109 North Post Oak Lane, Suite 300
Houston, Texas 77024
Telephone: (713) 735-8514
Facsimile: (713) 351-4514
pwicoff@ssbplaw.com (Non-service emails)
aharris@ssbplaw.com (Non-service emails)
famlawservice@ssbplaw.com (Email service only)

*Martin, Disiere, Jefferson & Wisdom*

By: _____
    Christopher W. Martin
    State Bar No.
    Attorney for Respondent
808 Travis St., 20th Floor
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
martin@mdjwlaw.com

799999.1

*Law Office of Heather M. Hughes*

By: _____
          Heather M. Hughes
          State Bar No. 00796794
          Amicus Attorney
952 Echo Lane, Suite 475
Houston, Texas 77024
Telephone:    (713) 463-5505
Facsimile:     (713) 463-5213
hhughes@hmhugheslaw.com

Unofficial Copy Office of Chris Daniel District Clerk

conviction the person would be required to register under the chapter.

(c) The notice required to be made under Subsection (b) must be made as soon as practicable but not later than the 40th day after the date the conservator of the child begins to reside with the person or the 10th day after the date the marriage occurs, as appropriate. The notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender and of the offense with which the person is charged.

(d) A conservator commits an offense if the conservator fails to provide notice in the manner required by Subsections (b) and (c). An offense under this subsection is a Class C misdemeanor.

Added by Acts 1995, 74th Leg., ch. 751, Sec. 7, eff. Sept. 1, 1995. Amended by Acts 1999, 76th Leg., ch. 330, Sec. 1, eff. Sept. 1, 1999; Acts 2003, 78th Leg., ch. 1036, Sec. 8, eff. Sept. 1, 2003.

SUBCHAPTER C. PARENT APPOINTED AS SOLE OR JOINT MANAGING CONSERVATOR

Sec. 153.131. PRESUMPTION THAT PARENT TO BE APPOINTED MANAGING CONSERVATOR. (a) Subject to the prohibition in Section 153.004, unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

(b) It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. A finding of a history of family violence involving the parents of a child removes the presumption under this subsection.

Added by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995. Amended by Acts 1995, 74th Leg., ch. 751, Sec. 32, eff. Sept. 1, 1995; Acts 1997, 75th Leg., ch. 1193, Sec. 20, eff. Sept. 1, 1997.

Sec. 153.132. RIGHTS AND DUTIES OF PARENT APPOINTED SOLE MANAGING CONSERVATOR. Unless limited by court order, a parent

EXHIBIT A

appointed as sole managing conservator of a child has the rights and duties provided by Subchapter B and the following exclusive rights:

(1)   the right to designate the primary residence of the child;

(2)   the right to consent to medical, dental, and surgical treatment involving invasive procedures;

(3)   the right to consent to psychiatric and psychological treatment;

(4)   the right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child;

(5)   the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child;

(6)   the right to consent to marriage and to enlistment in the armed forces of the United States;

(7)   the right to make decisions concerning the child's education;

(8)   the right to the services and earnings of the child; and

(9)   except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's estate if the child's action is required by a state, the United States, or a foreign government.

Added by Acts 1995, 74th Leg., ch. 20, Sec. 1, eff. April 20, 1995. Amended by Acts 1995, 74th Leg., ch. 751, Sec. 33, eff. Sept. 1, 1995; Acts 2003, 78th Leg., ch. 1036, Sec. 9, eff. Sept. 1, 2003. Amended by:

Acts 2005, 79th Leg., Ch. 916 (H.B. 260), Sec. 10, eff. June 18, 2005.


Sec. 153.133.   PARENTING PLAN FOR JOINT MANAGING CONSERVATORSHIP.    If a written agreed parenting plan is filed with the court, the court shall render an order appointing the parents as joint managing conservators only if the parenting plan:

(1)   designates the conservator who has the exclusive right

P-2

CONFIRMED FILE DATE: 9/8/2014

NO. 2006-68864

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CLIFFORD LAYNE HARRISON | § | |
| AND | § | 311TH JUDICIAL DISTRICT |
| CONNIE VASQUEZ HARRISON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOHN ERNEST LEE HARRISON AND | § | HARRIS COUNTY, TEXAS |
| VICTORIA MADELINE HARRISON, | § | |
| CHILDREN | § | |

Unofficial Copy Office of Chris Daniel District Clerk

2014 SEP -8 PM 4:45

AFTER HOURS FILING FILED

## EMERGENCY REQUEST FOR AN ORAL HEARING

## ON THE REQUEST FOR A DE NOVO HEARING AND

## NOTICE OF APPEAL TO THE DISTRICT COURT

This Request for An Emergency Oral Hearing On The Request For A De Novo Hearing And Notice of Appeal is filed by CONNIE VASQUEZ HARRISON, Respondent, requesting an Emergency Oral Hearting on The Order Granting Petitioner's Motion For Temporary Orders on Parent-Child Issues.

Respectfully submitted,

By: _____
CONNIE VASQUEZ HARRISON
PRO SE
713 444 7873
connie.harrison84@gmail.com

HARRIS COUN...
CO...

2014 SEP -8 PM 4:48

FILED
AFTER HOURS FILING

HARRIS COUN...
CO...

2014 SEP -8 PM 4:45

FILED
AFTER HOURS FILING

## Notice of Emergency Hearing

The above motion is set for hearing on _____ at

_____.m. in the 311th District Court.

SIGNED on _____.

_____
Judge or Clerk

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in

accordance with the Texas Rules of Civil Procedure.

_____
CONNIE VASQUEZ HARRISON

Unofficial Copy Office of Chris Daniel District Clerk

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2006-68864
_____ COURT OF APPEALS
APPELLATE CAUSE NO. _____

| | |
|---|---|
| IN THE MATTER OF THE MARRIAGE OF | ) IN THE DISTRICT COURT |
| CONNIE VASQUEZ HARRISON AND CLIFFORD HARRISON | ) |
| | ) HARRIS COUNTY, TEXAS |
| AND IN THE INTEREST OF JOHN HARRISON AND VICTORIA HARRISON, MINOR CHILDREN. | ) 311TH JUDICIAL DISTRICT |

------------------------------

EXCERPT OF HEARING

------------------------------

On the 16th day of January, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Alicia K. Franklin, Judge presiding, held in Houston, Harris County, Texas;

Proceedings reported in computerized stenotype by Stephanie Wells, Official Court Reporter.

                    A P P E A R A N C E S


FOR THE PETITIONER:
     SCHLANGER, SILVER, BARG & PAINE, LLP
     109 North Post Oak Lane
     Houston, Texas   77024
     713.735.8514
     BY:  MS. PATRICIA A. WICOFF
               -AND-
     MS. AMY HARRIS

FOR THE RESPONDENT:
     PRO SE


AMICUS:
     M. HEATHER HUGHES LAW OFFICE
     952 Echo Lane, Suite 410
     Houston, Texas   77024
     713.463.5505
     BY:  MS. M. HEATHER HUGHES


ALSO PRESENT:
     CLIFFORD HARRISON

INDEX
VOLUME 1 OF 1
(EXCERPT OF HEARING)

                                        PAGE   VOL.
JANUARY 16, 2015
Appearances................................... 2     1
Chronological Index........................... 3     1
Proceedings................................... 4     1
Reporter's Certificate........................ 7     1

(The following is an excerpt from a Hearing had on January 16, 2015.)

THE COURT: Ms. Harrison, listen to the question: Every motion that you are asking the Court to consider, have these all been filed on January 14th 2015, or thereafter? Have any of them been filed before January 14th 2015?

THE RESPONDENT: I believe the request for -- the request for hearings were filed January 13th.

THE COURT: Okay. You can't request a hearing without having a motion. So, I'm asking on the underlying documents that you are asking for hearings on, were any of them filed before January 14th?

THE RESPONDENT: They --

THE COURT: "Yes" or "no"? "Yes" or "no"? Were they?

THE RESPONDENT: They were filed, yes, before January 14th.

THE COURT: Okay. Identify for me which motions were filed before January 14th 2015.

THE RESPONDENT: The -- just the request for oral hearings were filed. The motions had already been filed. And I can -- I can let the Court know --

THE COURT: I asked you to identify those for me.

THE RESPONDENT: Okay. There's a Respondent's First Amended Emergency Motion for Continuance.

THE COURT: That says January 14th 2015. So, with regards to that request, that's denied. It's not timely. We are set for trial January 20th 2015. This is not timely. The Court is not going to hear it.

Next motion.

THE RESPONDENT: It was filed after the withdraw, after the withdraw of the --

THE COURT: Ma'am. Ma'am. I am not going to argue with you today. When I deny or grant whatever is being requested, we are moving on. So, it's not an option for you to continue to argue.

We're moving on to the next motion.

THE RESPONDENT: Respondent's Motion to Enter the Mediated Settlement Agreement and For Compliance.

THE COURT: Was filed when?

THE RESPONDENT: This was filed --

THE COURT: January 14th. It's not filed timely. It's denied.

Let's move on.

THE RESPONDENT: May we hear it next week?

THE COURT: When I say it's denied, that

means we are not hearing it before trial.

MS. HARRIS: Judge, just for the record, we have not even received a copy of that motion.

THE RESPONDENT: Yes, I've mailed you a copy. Here's a copy for you right now.

THE COURT: Next motion, Mrs. Harrison.

(End of excerpt.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS )
COUNTY OF HARRIS )

I, Stephanie Wells, Official Court Reporter in and for the 311th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $35.00 and was paid by _____.

WITNESS MY OFFICIAL HAND this the 24th day of March, 2015.

/s/ Stephanie Wells
_____
Stephanie Wells, Texas CSR 2700
Expiration Date: 12/31/2015
Official Court Reporter
311th District Court
301 Caroline, 8th Floor
Houston, Texas 77002
713.562.6969

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUMES
TRIAL COURT CAUSE NO. 2006-68864
_____ COURT OF APPEALS
APPELLATE CAUSE NO. _____

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF | ) | IN THE DISTRICT COURT |
| CONNIE VASQUEZ HARRISON AND CLIFFORD HARRISON | ) | HARRIS COUNTY, TEXAS |
| AND IN THE INTEREST OF JOHN HARRISON AND VICTORIA HARRISON, MINOR CHILDREN. | ) | 311TH JUDICIAL DISTRICT |

------------------------------

EXCERPT OF TRIAL

------------------------------

On the 20th day of January, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Alicia K. Franklin, Judge presiding, held in Houston, Harris County, Texas;

Proceedings reported in computerized stenotype by Stephanie Wells, Official Court Reporter.

A P P E A R A N C E S

FOR THE PETITIONER:
     SCHLANGER, SILVER, BARG & PAINE, LLP
     109 North Post Oak Lane
     Houston, Texas  77024
     713.735.8514
     BY:  MS. PATRICIA A. WICOFF
               -AND-
          MS. AMY HARRIS

FOR THE RESPONDENT:
     PRO SE


AMICUS:
     M. HEATHER HUGHES LAW OFFICE
     952 Echo Lane, Suite 410
     Houston, Texas  77024
     713.463.5505
     BY:  MS. M. HEATHER HUGHES


ALSO PRESENT:
     CLIFFORD HARRISON

INDEX
VOLUME 1 OF 1
(EXCERPT OF TRIAL)

                                          PAGE   VOL.
JANUARY 20, 2015
Appearances..................................  2     1
Chronological Index..........................  3     1
Proceedings..................................  4     1
Reporter's Certificate.......................  6     1

(The following is an excerpt from Trial had on January 20th 2015.)

THE RESPONDENT: Excuse me, Judge, I hate to interrupt, but I -- if it's okay. I don't want to upset the Court, but I have a Respondent's Emergency Motion to Enforce the Mediated Settlement Agreement.

THE COURT: It is denied. We are in trial. And, Ms. Wicoff, if you will call your witness back to the stand.

MS. WICOFF: Yes, ma'am.

THE COURT: We will get started again.

THE RESPONDENT: Oh, one of the things, Your Honor, a -- I just object to not having a jury trial. I know I was late this morning, but I didn't --

THE COURT: Okay. That's enough. Ms. Harrison, we are in trial. This is not pretrial. If you would have been here at 8:30 this morning like you were ordered to be, we could have handled any of these issues. We are in trial. We are in the middle of witness testimony. And there's going to be order to these trial proceedings. If you're unfamiliar with the rules of conduct, then I suggest you get yourself familiarized with them. And that goes for anybody in this courtroom.

With that being said, we are resuming and

we are going to conduct these proceedings in an orderly fashion.

THE COURT: Ms. Wicoff, you may resume.

THE RESPONDENT: Excuse me, Judge. May I just say something into the --

THE COURT: You may not.

THE RESPONDENT: -- record, to the jury trial --

THE COURT: You may not.

THE RESPONDENT: I object to us not having a jury trial.

THE COURT: Okay. Duly noted on the record. We're getting started.

Ms. Wicoff, you may proceed.

MS. WICOFF: Thank you, Judge.

DIRECT EXAMINATION CONTINUED

BY MS. WICOFF:

(End of Excerpt.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS    )
COUNTY OF HARRIS      )

I, Stephanie Wells, Official Court Reporter in and for the 311th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $30.00 and was paid by _____.

WITNESS MY OFFICIAL HAND this the 24th day of March, 2015.

/s/ Stephanie Wells
_____
Stephanie Wells, Texas CSR 2700
Expiration Date:  12/31/2015
Official Court Reporter
311th District Court
301 Caroline, 8th Floor
Houston, Texas  77002
713.562.6969